**LUCAS, Commissioner of Internal Revenue, v. UNITED STATES ex rel. BLACKSTONE MFG. CO.**

**No. 5161.**

Court of Appeals of District of Columbia.

Argued for Appellee and Submitted for Appellant Oct. 8, 1930.

Decided Nov. 3, 1930.

Leo A. Rover and John W. Fihelly, both of Washington, D. C., for appellant.

F. O. Graves and J. R. Sherrod, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and WHEAT, Chief Justice of the Supreme Court of the District of Columbia.

MARTIN, Chief Justice.

This case relates to certain income and profits taxes assessed by the Commissioner of Internal Revenue against the Blackstone Manufacturing Company, and challenges the action of the Commissioner in offsetting certain overpayments for the years 1917 and 1919 against a deficiency for the year 1918.

The case was commenced in the lower court by a petition for mandamus filed by the taxpayer against the Commissioner for a refund. An answer was filed which was demurred to, and the demurrer was sustained. The Commissioner elected to stand upon his answer, and judgment was entered against him. This appeal followed.

The answer of the Commissioner sets out, in substance, the following facts:

On June 15, 1918, the collector of internal revenue erroneously and illegally collected from the taxpayer excessive income taxes amounting to $10,761.04 for the year 1917. The Commissioner, however, did not schedule this sum as an overpayment until November 26, 1927. When the taxpayer made its return for the year 1918, a deficiency in the sum of $11,708.28 was asserted by the Commissioner in reference thereto. The taxpayer appealed from this decision to the United States Board of Tax Appeals, and the appeal was not decided until October 6, 1927, when the decision of the Commissioner was affirmed. 8 B. T. A. 537. On October 18, 1927, the taxpayer paid the amount of the deficiency to the collector of internal revenue, but this was not accepted by the Commissioner as a settlement of the deficiency, inasmuch as the overpayment of $10,761.04 for 1917, and also an overpayment of $3,953.52 for 1919, were not yet disposed of, and the Commissioner held that the deficiency and overpayments should be set off pro tanto against one another in an adjustment of the respective claims. Whereupon the sum thus paid by the taxpayer upon the deficiency was refunded and paid to it, as an overpayment for the year 1918. The Commissioner accordingly credited the taxpayer with the amounts of the overpayments less the amount of the deficiency, and refunded and paid to the taxpayer the net credit balance, together with interest as provided by the statute. The Commissioner alleged that the entire account for taxes between the taxpayer and the United States for the years 1917, 1918, and 1919 was thereby fully settled and closed.

In our opinion this answer sets out a complete defense to the taxpayer's petition, and the demurrer thereto should have been overruled.

Section 284(a) of the Revenue Act of February 26, 1926 (44 Stat. 9, 66, 26 USCA § 1065(a), provides in part as follows: "Where there has been an overpayment of

any income, war-profits, or excess-profits tax imposed by this act, * * * the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any such Act as amended, the amount of such overpayment shall * * * be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer."

The sole contention made in the brief of the taxpayer is that, when the overpayments for the years 1917 and 1918 were scheduled by the Commissioner on November 26, 1927, there was no tax deficiency due from the taxpayer for 1918, for the reason that such deficiency had been fully settled by the payment made by the taxpayer on October 8, 1927. We think, however, that the Commissioner was right in refusing to accept that payment as a settlement of the deficiency, and in returning the same to the taxpayer, inasmuch as otherwise the government would have been paying interest to the taxpayer upon the overpayments from the date of payment, whereas it would have collected interest upon the deficiency only from February 26, 1926. We have already held that such a result would contravene the plain intent of Congress. See McCarl v. U. S. ex rel. Leland, 59 App. D. C. 362, 42 F.(2d) 346. Also compare Riverside & Dan River Cotton Mills v. United States (Ct. Cl.) 37 F.(2d) 965; York Safe & Lock Co. v. United States (Ct. Cl.) 40 F.(2d) 148. In each of these cases certiorari was denied by the Supreme Court, October Term, 1930. U. S. ex rel. Leland v. McCarl, 51 S. Ct. 30, 75 L. Ed. ——; Riverside & Dan River Cotton Mills v. United States, 51 S. Ct. 21, 75 L. Ed. ——; York Safe & Lock Co. v. United States, 51 S. Ct. 21, 75 L. Ed. ——.

The judgment of the lower court is therefore reversed, and the cause is remanded for further proceedings not inconsistent herewith.

WHEAT, Acting Associate Justice (dissenting).

I find myself unable to agree. In my opinion there is nothing in the statutes which prevents a taxpayer from paying the amount of a deficiency assessed against him at any time, even though he has pending a claim for refund of an overassessment. In the present case, the deficiency had been assessed and affirmed by the Board of Tax Appeals. To say that the deficiency was not then "due," that something remained to be done before it became due, and that the statute did not permit the taxpayer to pay it forthwith and get credit therefor, seems to me to put upon the statute an interpretation so unreasonable that we should not adopt it unless the words used unmistakably compel it. To hold, as did the Commissioner, that a payment thus made was not to be treated as payment of the deficiency, but, on the contrary, as the creation of a new overpayment, rejects the realities of the situation in favor of a theory fanciful in the extreme. Our decision in McCarl v. U. S. ex rel. Leland, 59 App. D. C. 362, 42 F.(2d) 346, does not require us so to hold. In that case, the claim was made that the taxpayer, by prosecuting an appeal to the Board of Tax Appeals from the Commissioner's deficiency assessment, might exact from the government an immediate refund of the overassessment, although it might finally be determined that at the time of the overpayment there was due the government more than the amount of the overassessment. Rejecting that contention the court said (page 347 of 42 F.(2d): "In our view it was the intent of Congress in the enactment of section 284 to require immediate refund of overpayments only in the event of a net balance in favor of the taxpayer. Any other interpretation would permit the taxpayer, through the medium of an appeal from the Commissioner's determination of a deficiency, to exact from the government interest when the net balance was against him. Such a result would be inequitable and inconsistent with the obvious purpose of the statute."

I can readily see why the government should not be required to refund overpayments while deficiencies remain unpaid. That, however, is quite different from refusing to allow the payment of a deficiency, if the taxpayer chooses to make it, while his claim for refund remains unpaid. That interpretation would permit the government, through delay in passing upon the claim for refund, to exact from the taxpayer interest upon a deficiency which he was ready and willing to pay. I think the judgment should be affirmed.