**TULL & GIBBS, Inc., v. UNITED STATES.**

No. 6216.

Circuit Court of Appeals, Ninth Circuit.

March 16, 1931.

Charles E. McCulloch and Ivan F. Phipps, both of Portland, Or. (Carey, Hart, Spencer & McCulloch, of Portland, Or., and Wakefield & Witherspoon, of Spokane, Wash., of counsel), for appellant.

Roy C. Fox, U. S. Atty., and E. J. Farley, Asst. U. S. Atty., both of Spokane, Wash. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

RUDKIN, Circuit Judge.

This was an action to recover overpayments of income and excess profits taxes for the year 1919. A demurrer to the amended complaint was sustained by the court below, and, from a judgment of dismissal, the plaintiff has appealed.

The following statement is deemed sufficient to a proper understanding of the questions presented for decision: During the years 1917, 1918, and 1919 the appellant sold furniture and household goods on the installment plan, reserving title to the property sold until the last installment of the purchase price was paid in full. During these years it returned its annual net income on the straight accrual basis, in accordance with regulations prescribed by the Commissioner of Internal Revenue; that is, each year it reported the entire profits on all installment sales made during the year, regardless of whether the installments were paid within the year or later. Between 1919 and 1924 numerous regulations were promulgated from time to time by the Commissioner of Internal Revenue prescribing rules for computing income on installment sales. The substance of these rules was:

"Such income may be ascertained by taking that proportion of the total payments received in the taxable year from installment sales (always including payments received in the taxable year on account of sales effected in earlier years as well as those effected in the taxable year) which the gross profit to be realized on the total installment sales made during the taxable year bears to the gross contract price of all such sales made during the taxable year." Article 42 of Regulations 45, December 29, 1919.

January 4, 1924, a further regulation was promulgated providing:

"Where a taxpayer has in past years filed returns upon the cash basis or upon the straight accrual basis, but kept accounts upon the installment basis, amended returns may be filed for the purpose of reporting the income upon the installment plan in accordance with article 42 of Regulations 45 and 62."

March 12, 1925, the appellant filed an amended return for the year 1919 disclosing a net income for that year of $23,106.78 and a total tax of $2,064.96. The income thus reported did not include an item of $137,-366.92, representing profits on installment sales made prior to 1919, but paid during that year. At the same time the appellant filed a claim for a refund in the sum of $51,141.50, representing an overassessment and overpayment of income and excess profits taxes for the year 1919. The Commissioner added to the net income in the amended return the item of $137,366.92, representing profits on sales made prior to December 31, 1918, but paid during 1919, and determined that the appellant was entitled to a refund in the sum of $16,692.69, which would be applied against deficiencies asserted by the Commissioner for the years 1920, 1921, and 1923. The deficiencies thus asserted exceeded the amount of the refund allowed.

In March, 1925, the Board of Tax Appeals held that the installment sales method prescribed by the Commissioner was unauthorized, and therefore invalid. This ruling presumably led to the enactment of the following provisions found in the Revenue Act of 1926:

"Sec. 212. (d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total

profit realized or to be realized when the payment is completed, bears to the total contract price." 26 USCA 953(d).

"Sec. 1208. The provisions of subdivision (d) of section 953 of this title shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any of such Acts as amended. Any tax that has been paid under such Acts prior to February 26, 1926, if in excess of the tax imposed by such Acts as retroactively modified by this section, shall, subject to the statutory period of limitations properly applicable thereto, be credited or refunded to the taxpayer as provided in section 1065 of this title." 26 USCA § 953a.

The appellant contends that profits received in 1919 on account of installment sales made in 1918 and prior years should not be included in the amended return of 1919, because such profits had already been returned and taxes paid thereon; and, further, that the profits of 1918 and prior years had become a part of the invested capital. In answer to similar contentions in John M. Brandt Co. v. United States, 40 F.(2d) 126, 128, the Court of Claims said:

"We think it is clear from a consideration of these two sections and the legislative history of the Revenue Act of 1926, that the statute expressly requires the inclusion in taxable net income in the years in which the installment sales method of accounting is employed of amounts received in those years from installment sales made in prior years, notwithstanding the profits upon such sales were reported as income by the taxpayer in such prior years in which it employed the straight accrual method of accounting. Blum's, Inc., 7 B. T. A. 737, and Mayer & Co., 9 B. T. A. 815.

"It is further contended that, if the statute requires the inclusion in income of payments received in years subsequent to the change to the installment sales method of accounting, it imposes a direct tax upon capital without apportionment among the several states in proportion to their population in violation of section 9, art. 1, of the Constitution. There is no merit in this contention. The amounts taxed represent profits on installment sales effected in years prior to 1918, and the tax therefore is necessarily one upon income and not upon capital. Such amounts do not lose their character as income merely because, under a new method of accounting which the taxpayer elected to

150

adopt, it is required to treat them as income in a year other than the one in which they were originally reported under its method of accounting. Profits earned subsequent to the Sixteenth Amendment to the Constitution do not become capital of a nature such as may not be subjected to income tax, although such imposition may result in taxation of such income a second time. The amounts which the defendant included in plaintiff's taxable income for the years involved constituted income under the Sixteenth Amendment, and, such being the case, it is within the power of Congress to prescribe the time, the manner, and the method of accounting for such income for tax purposes. No attempt is made by the statute to define new objects of income. It simply provides that those taxpayers who choose to report their income in accordance with its provisions must report the income as it is reduced to possession in cash, notwithstanding the fact that some part of it had previously been returned and taxed under the accrual method of accounting employed in earlier years, and it is no defense to say that double taxation results. * * * " (Certiorari denied, 51 S. Ct. 100, 75 L. Ed. ——, Dec. 1, 1930.)

See, also, Hoover-Bond Co. v. Nauts (D. C.) 42 F.(2d) 299.

 Were the appellant permitted to file amended returns for the years 1917 and 1918, the amended return for 1919 would have been in strict accordance with the determination of the Commissioner, so that the difficulty with which it finds itself confronted arises from the fact that the right to file amended returns, or claim refunds, for the years prior to 1919, was barred by the statute of limitations. Manifestly, the amended return for 1919, as filed, did not conform to the straight accrual basis or to the installment plan, and did not reflect the true income of the taxpayer for that year. In effect, the appellant is attempting to claim credit in 1919 for taxes paid in prior years, in the face of the fact that a direct claim for a refund of such prior taxes is barred by the statute of limitations. Had the change from the straight accrual basis to the installment plan been mandatory, it might well be urged that Congress did not intend to impose a double tax. But it was optional with the government to allow the change, and optional with the taxpayer to accept it; and, when the appellant exercised that option, and filed the amended return, it accepted the change with the burden imposed, so that the question of double taxation does not arise. The question

may not be entirely free from doubt or difficulty, but we think it was correctly determined in the cases to which we have referred.

 Nor do we see any special merit in the contention that the tax of 1919 was imposed on invested capital, rather than on income. When the appellant exercised the option granted by the government and filed the amended return, the amended return became in effect an original return, and it can hardly be said that income actually received during the year 1919 was invested capital at the beginning of that year.

 It is finally contended that the appellant was at least entitled to recover the amount of the refund as determined by the Commissioner. But the Commissioner likewise determined that the amount of the refund should or would be applied or credited on claimed deficiencies for other years. In so doing the Commissioner acted within his authority, even though the amount of the deficiencies had not yet been ascertained. To hold otherwise would entitle the appellant to interest on the amount of the refund while the government would receive no interest on the deficiencies which might equal or exceed the refund. McCarl v. U. S. ex rel. Leland, 59 App. D. C. 362, 42 F.(2d) 346. It was conceded on the argument that this question is of little moment because the government would in no event pay the refund, even if reduced to judgment, until the amount of the deficiencies was ascertained and determined. For this reason, the action to recover the refund was prematurely brought.

We find no error in the record, and the judgment is affirmed.