STANDARD OIL CO. (INDIANA) v. UNITED
STATES.

No. L–2.

Court of Claims.

Feb. 5, 1934.

984

Albert L. Hopkins, of Chicago, Ill. (Harry B. Sutter, Jay C. Halls, Anderson A. Owen, Louis L. Stephens, and John L. Hopkins, all of Chicago, Ill., on the brief), for plaintiff.

James A. Cosgrove and W. W. Scott, both of Washington, D. C. (D. Louis Bergeron, of Washington, D. C., on the brief), for the United States.

Before GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This action is begun to recover $1,645,-420.26 as additional interest due on overpayments made by plaintiff on its taxes for the years 1918 and 1919.

The facts connected with the case may at first seem to be very complicated, but the issue involved and the manner in which it arose can be stated quite simply. On March 21, 1928, the Commissioner of Internal Revenue, having had under consideration the taxes of plaintiff for the years 1918 to 1926, inclusive, sent out a so-called "sixty-day letter" and notice that he had determined the correct liability of plaintiff to be as shown in the table, which set out the amount of overassessments and deficiencies for each year in parallel columns, showed the total thereof, and the net deficiency. The table listed overassessments of nearly $5,000,000, of which $2,705,795.39 was for the year 1918 and total deficiencies of $7,330,926.23, of which $4,-375,023.66 was for 1920. A balance was struck which showed that the net deficiency or liability of the plaintiff at that time was $2,429,297.56. (See finding 6.) This notice further stated that—

"Payment of the amount of additional tax should not be made until a bill is received from the collector of internal revenue for your district and remittance should then be made to him in accordance with the terms of the notice."

After the receipt of this letter and on March 24, 1928, the plaintiff paid by check to the proper collector of internal revenue the amount of the deficiency for 1920 together with interest thereon, making a total of $4,919,444.41, and at the same time in various ways the plaintiff's attorney stated that the check was in payment of taxes and interest for the year 1920. The collector accepted the check and acknowledged the payment, but, following instructions previously given by the Commissioner, did not apply the payment to the 1920 deficiency and kept it in a suspense account. Subsequently, as will be shown further on, the amount so paid was applied on other taxes then due, and the overassessments for 1918 and 1919 were applied on the deficiency for 1920, with the result that plaintiff was allowed $1,645,420.26 in interest less than it would have been had the payment been applied as directed by its attorney. How this difference in the calculation of interest arose will appear when the statutory provisions applicable thereto are considered.

It will be observed that at the time the payment was made overassessments for the years 1918, 1919, and 1922, and deficiencies for 1920, 1921, 1923, 1924, 1925, and 1926 had been determined. The overassessments had not been finally allowed nor the deficiencies finally assessed. The amount of interest to be allowed plaintiff on the final adjustment of its tax account was controlled by the provisions of the Revenue Act of 1926, as hereinafter stated. Section 283 (d) thereof (26 USCA § 1064 (d) provided that in case of assessments made after the enactment of the act, under acts prior to November 23, 1921 (which was the date of the enactment of the 1921 act), interest should be collected as part of such tax "from the date of the enactment of this act [February 26, 1926] to the date such tax is assessed." Section 284 (a), of the Revenue Act of 1926 (26 USCA § 1065 (a) further provided:

"(a) Where there has been an overpayment of any income, war-profits, or excess-profits tax imposed" by prior acts "the amount of such overpayment shall  *   *   * be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer."

Section 1116, of the same act (26 USCA § 153 note), as applied to this case, provides that upon the allowance of a credit upon an additional assessment interest shall be allowed to the due date of the amount against which the credit is taken, and, if that is an additional assessment, then to the due date of the assessment of that amount.

It will be seen that under these provisions overassessments drew interest from the time of their payment, while under section 283 (d) deficiencies imposed by acts prior to November 23, 1921, drew interest only from February 26, 1926. The evident purpose of the payment was to prevent any of the overassessment for 1918 or 1919 being applied on the deficiency for 1920, as such application would prevent the amount so applied from drawing interest beyond the time of its application; otherwise interest would continue to run thereon until this amount had been satisfied in the manner required by law. To state it briefly, if the overassessment had been so applied, the interest payments would have been equalized between plaintiff and defendant; on the other hand, if plaintiff could have its payment applied upon the 1920 deficiency, it would, as before stated, get interest on the overpayments from the time they were made, notwithstanding it was indebted to the government at that time, and pay interest on the deficiency only from February 26, 1926. Plaintiff's contention is that it had the right to direct the application of the payment which it made to the collector, and when it was made it absolutely extinguished the indebtedness on the 1920 deficiency; that the overpayments could not afterward be applied on a deficiency for 1920 because there was nothing "then due" as specified in section 284 (a) of the 1926 act quoted above; and for the same reason, after the payment was made, there remained no taxes for 1920 against which a credit could be taken under the provisions of section 1116 of the same act.

It will be seen as the discussion proceeds that, if plaintiff's theory is sustained, there will not only be cases where the taxpayer will be entitled to interest for a period during which he is indebted to the government as in the instant case, but in some instances the taxpayer will be able to sue the government for a refund and obtain a judgment, although he is actually owing a balance to the defendant at the time when suit is begun and when judgment is rendered. Certainly Congress never intended such a result, and we do not think a court should lend its support to a doctrine which would bring it about unless required so to do by clear and unambiguous provisions in the statutes applicable thereto.

The defendant, on the other hand, insists that plaintiff had no right to direct the

application of the payment upon the 1920 taxes, and, as it was not so applied, this item of indebtedness to the government was not extinguished, but continued in full force and effect until the overpayments were allowed and applied upon it.

These contentions of the several parties constitute the issue in the case.

Ordinarily when a debtor makes a payment to a creditor he can direct how the payment shall be applied if there is more than one debt, and this rule has been applied to payments on taxes. In the absence of some provision in the statute or of circumstances that modify the original directions, we think it may be conceded that the plaintiff was entitled to have the payment applied on the 1920 deficiency as directed by its attorney. The argument of defendant is, in effect, that the statutes with reference to refunds of overpayments and interest thereon were not intended by Congress to be so construed or applied as to permit a refund of overpayment to taxpayers unless there was a net balance in favor of the taxpayer, or to require the payment of interest by the government when the net balance was against him, and, if a payment is made upon a deficiency under such circumstances as to show that it was made to defeat the government's right to set off overpayments against deficiencies and thus require the payment of interest upon overpayments although the balance of the tax account was in favor of the government, the taxpayer should not be permitted to so direct the application of the payment as to accomplish this result. There have been no less than five decisions by federal courts announcing this rule and none to the contrary. As it is insisted on behalf of plaintiff that four of these decisions are not in point because the facts are not similar to those in the case at bar and that the remaining one is erroneous, it will be necessary to review these decisions and consider their application.

In McCarl v. Leland, 59 App. D. C. 362, 42 F.(2d) 346, 347, the taxpayer sought by mandamus to compel a refund for one year while a deficiency asserted by the Commissioner for another year was pending before the Board of Tax Appeals. The ultimate question was whether the taxpayer was entitled to a mandamus, and the court held that he was not; but, in construing section 284 of the 1926 act (26 USCA § 1065) and holding that it did not sustain the taxpayer's contention, the court said that any other interpretation would permit the taxpayer "to exact from the government interest when the net balance was against him," and further that—

"Such a result would be inequitable and inconsistent with the obvious purpose of the statute."

In Tull & Gibbs v. United States (C. C. A. 9th) 48 F.(2d) 148, 150, the plaintiff brought a suit to recover overpayments of income and excess profits taxes for the year 1919, but there were deficiencies claimed by the Commissioner, and the judgment largely depended on whether the Commissioner had the right to apply the refund on deficiencies not finally determined. The court held that the Commissioner had the authority to determine "that the amount of the refund should or *would* be applied or credited on claimed deficiencies for other years * * * even though the amount of the deficiencies had not yet been ascertained." (Italics ours.) The court gave as a reason for this ruling that "To hold otherwise would entitle the appellant to interest on the amount of the refund while the government would receive no interest on the deficiencies which might equal or exceed the refund."

In this case, had the taxpayer's contentions been sustained, it would have recovered judgment, although when the deficiencies were finally determined it appeared that it was indebted to the government at the time the judgment was rendered.

In Lucas v. Blackstone Mfg. Co., 59 App. D. C. 389, 45 F.(2d) 291, 292, the taxpayer contested the right of the Commissioner to refuse to receive payment of the deficiency of the year 1918 and instead of so doing to apply certain overpayments for the years 1917 and 1919 against such deficiency, and again the court was required to construe section 284 (a) of the Revenue Act of 1926. The case closely parallels the one at bar, as the taxpayer claimed that, when the overpayments for the years 1917 and 1919 were scheduled by the Commissioner, there was no tax deficiency due for 1918 for the reason that the deficiency had been fully settled by a payment made by the taxpayer on October 8, 1927, but the court said:

"The Commissioner was right in refusing to accept that payment as a settlement of the deficiency * * * inasmuch as otherwise the government would have been paying interest to the taxpayer upon the overpayments from the date of payment, whereas it would have collected interest upon the deficiency

only from February 26, 1926. We have already held that such a result would contravene the plain intent of Congress."

It is true that in this case the deficiency had been finally determined, but the overpayments had not been finally allowed; that is, the payment was made before the overpayments were finally scheduled. The ultimate question, therefore, was whether the deficiency had been extinguished by payment at the time the overpayment was definitely allowed, which is the same question as arises in the case at bar. The holding was in effect that, if an overpayment had been disclosed by the returns and existed at the time when the payment was made, the taxpayer had no right to direct the application of the payment to a deficiency, that the Commissioner was right in refusing to so accept it, and that he correctly returned it to the taxpayer instead of applying it on the deficiency.

In Noyes v. United States (C. C. A. 9th) 55 F.(2d) 870, 872, the Commissioner applied an overpayment for 1918 to a deficiency for 1917, of which the taxpayer had been notified by a sixty-day letter, but which had not been finally determined and assessed. In this case the controversy related to a deficiency which had not been definitely determined, while in the former it was as to an overpayment not finally allowed. Whether the overpayment had been allowed at the time the application had been made does not appear from the opinion of the court, but the court held in effect that the Commissioner had the right to so apply overpayments as to prevent a recovery on the part of the taxpayer when "the taxpayer owes the government a like amount." While this case applies only to one phase of the case at bar, the court again had occasion to pass on the construction of section 284 (a) of the act of 1926 and the meaning of the words "then due" used therein.

It will thus be seen that in all of these cases the various courts, in order to sustain their decisions, have laid down principles which are quite inconsistent with those upon which plaintiff bases its case, and if these principles are followed must defeat it.

The case of United States v. Pacific Midway Oil Co.[1] (D. C., N. D. Cal.) CCH 32, par. 9072, is one in which the facts were parallel with the case at bar, but additional circumstances made it stronger in favor of the taxpayer than the one we now have under consideration. In that case, as in the case

at bar, the taxpayer was notified that it had made overpayments for the years 1917, 1918, and 1919, and that there was a deficiency for the year 1920. The taxpayer immediately made payment of the deficiency and interest thereon, giving directions that it should be applied on the 1920 deficiency, which was accordingly done. Subsequently, the government began a suit to recover back what was claimed to be an overpayment of interest on the overpayments resulting from this action and alleging that the collector had no right or authority under the circumstances to apply the payment on the 1920 deficiency, but, on the contrary, the deficiency should have been satisfied by applying the overpayments thereto. The court took under consideration the cases above cited, and in accordance therewith held in substance that, when a payment was made in such a manner as "to defeat the Government's right to set-off overpayments against deficiencies and thus require the payment of interest upon overpayments, such payment should be applied only to the *net balance of the deficiency.*" The government was therefore awarded judgment for the interest improperly paid.

It is not contended on behalf of plaintiff that the case last cited is not directly in point, but it is said that the decision is erroneous. The other cases cited above are said not to be in point because based on different facts, but a careful reading of these cases will show that they announced principles as the basis of each decision which were in line with the decision in the case of the Pacific Midway Oil Co., supra, and wholly inconsistent with the argument made on behalf of plaintiff. In all of them the same statute was being construed, and the basis of the decision in each of these cases was the intent of Congress as manifested by the statutes to which reference has been made.

It is insisted on behalf of plaintiff that there is nothing in the language used from which an inference of such intent can be drawn. With this we do not agree, but, on the contrary, think it is manifest from the several sections of the statute which direct the application of refunds and determine the manner in which interest can be computed that the general purpose of these provisions and the object which was sought to be attained by Congress was to require a mutual set-off of overpayments and deficiencies and to prevent the allowance of interest to the taxpayer for a period during which he was indebted to the government. Whether the

[1] Not for publication.

statutes accomplish such a purpose depends upon their wording. They are not entirely clear, especially section 284 (a) of the 1926 act. If Congress had intended the construction which plaintiff gives to this section, it would have been much easier, shorter, and plainer to have said: "When an overpayment * * * has been allowed * * *, the amount of such overpayment shall * * * be credited against any deficiency * * * due *at the time of such allowance.*" It did not use the word "when"; it said, "where there has been an overpayment," and made no reference to its allowance, or requirement that it should be allowed, but provided only that it should be credited against a tax "then due."

The words "where there has been an overpayment" evidently refer to a case where the Commissioner has determined that the returns disclose an overpayment in manner and amount as announced by him, and the court must hold that such a condition existed at the time when he made a statement to that effect and so notified the taxpayer. In this particular case it was at the same time when he announced the finding of a deficiency for 1920. Counsel for plaintiff contend, and we think rightly, that the application of the overpayment cannot be made until it is finally allowed. They also assert that a credit cannot be applied upon an indebtedness that does not exist. We think this is self-evident, but it does not tend to support plaintiff's construction of the section under consideration. The argument of plaintiff is, in effect, that the words "then due" refer solely to the time when the credit is made, although the statute does not so state and Congress must have well understood that it was unnecessary to provide that the credit could only be made upon an indebtedness which was "then due." Such a limitation on the application of the credit would be entirely unnecessary, as the section would be so understood without any special provision to that effect. We think the words "then due" refer to the time when the deficiency was first determined and found to exist. It will be noticed that plaintiff itself claims in argument that the deficiency was due on that date (March 21, 1928, when the sixty-day letter and notice were sent out), and it will also be observed that by the same notice and at the same time the overpayments were determined. The case was therefore one "where there has been an overpayment of any income, war-profits, or excess-profits tax," and by the other provisions of section 284 (a) the Commissioner

was required to credit the overpayments upon a deficiency. Where there was more than one, he would have the right to select the deficiency or deficiencies upon which the overpayments should be applied. If, as we think, the statute directed the application of the credit at the time when it was first determined, the taxpayer had no right to so direct the application of the payment as to prevent the law from being obeyed. In other words, its attempted direction was wholly inconsistent with the provisions of the statute and would have no force and effect. If we are correct in the conclusions stated above, it follows that the attempt of plaintiff to direct the application of its payment had no effect. The collector and Commissioner were right in refusing to so apply it, and the 1920 deficiency was still due when the Commissioner finally allowed the overpayments and credited them thereon.

Counsel for plaintiff cite a large number of decisions to show that there could be no credit of 1918 and 1919 overpayments until they were determined and allowed, and it is argued because the final allowance did not occur until April 24, 1928, that these overpayments could not be applied on the deficiency for 1920, but we think these decisions have no application to the case now before us. The argument for plaintiff assumes that the rule contended for by defendant required the credit of the overpayment to be made upon the deficiency prior to the allowance thereof. No such claim is made on behalf of defendant, but the defendant does argue that under the law as applied to the facts in the case the plaintiff could not direct the application of the payment which it undertook to make on the 1920 tax, and we think an examination of the law will show sufficient basis for this contention. The statute that directed *where* the overpayment should be applied went into force as soon as the Commissioner determined that an overpayment had been made and that a deficiency existed, for an overpayment would exist when the Commissioner made his determination thereof although it had not been finally allowed, just as a deficiency would exist when the Commissioner so determined although the assessment had not been finally made. It is true that the Commissioner could not make an application of the overpayment until it was finally allowed, but the question in this case is not *when* the overpayment was allowed, but *where* it was to be applied under the statute. It should be kept in mind that the Commissioner did not make the credit until after

the overpayment had been allowed pursuant to the agreement contained in the waiver, and then computed the interest according to the provisions of the statute. There is nothing in the cases cited on this point that appears to us to support plaintiff's claim that it had the absolute right to direct the payment involved. There were cases in which overpayments and additional assessments had been determined and certified, but in none did it appear that the taxpayer made any payment after notice that an overpayment for one year and a deficiency for another had been disclosed by the returns, nor did any issue arise as to the application of any payment or credit. In all of them the manner in which the application was made was conceded to be proper, and the question to be determined was merely as to the time when the credit was finally allowed or as to the time it was taken as forming a basis for the computation of interest.

It is urged on behalf of plaintiff that the doctrine invoked by the defendant would have resulted in a different interest calculation if applied to the cases of U. S. v. Boston Buick Company, 282 U. S. 476, 51 S. Ct. 206, 75 L. Ed. 470, and Pottstown Iron Co. v. U. S., 282 U. S. 479, 51 S. Ct. 205, 75 L. Ed. 472. No explanation is given for this, and here again we think there is a confusion on the two questions of *where* the overpayment should be applied and *how* the interest should be computed. It will be observed that the application of the overpayment is controlled by section 284 (a), which points out *where* the application should be made, and this is all it does. It makes no reference to the matter of interest. Section 1116 of the 1926 act directs and controls the manner in which interest should be computed upon the allowance of a refund or credit after the determination of the place where the credit shall be applied under section 284 (a). Under its terms the interest could not be calculated until after the credit had been actually allowed for many reasons, and especially for the reason that until the amount of the credit was definitely fixed by the allowance thereof there would be no way of knowing how much should be credited. So also when a refund is to be made the interest is allowed up to the date of the refund. In the case before us, as a *credit* was to be made, interest is allowed only up to the date when the taxes upon which the credit was to be applied became due. This would have to be done in all cases, and, instead of being inconsistent with the rule applied in the cases cited on behalf of plaintiff, is directly in accordance therewith.

The rule stated above would not delay the settlement of tax accounts appreciably, as it applies only to cases where both deficiencies and overpayments have been found by the Commissioner, and the final determination of the overpayment or deficiency as the case might be was only a matter of a few weeks at most. It would not interfere with the practice of the Department, which so far as we are aware has been entirely consistent therewith. This is shown by the cases that we have already cited. Tull & Gibbs v. United States, supra, was a case in which the deficiency had not been finally determined, but the principle applied is the same. Lucas v. Blackstone, supra, was a case in which the deficiency had been finally determined and it was held that the commissioner might refuse to apply a payment on a deficiency pending the final determination of an over-assessment. In United States v. Pacific Midway Oil Co., supra, the facts were precisely similar to those in the case at bar. So far as this matter has reached the courts, the practice of the Department has been that which was followed in the case at bar.

■ Where a statute is ambiguous, the courts are permitted to consider the report of the congressional committee which reported the bill carrying the provisions in controversy. In the report of the Senate Finance Committee upon the Revenue Act of 1926, reference was made to the fact that the previous law made an unfair discrimination in favor of the taxpayer in the matter of interest, and it was said that "it did not seem fair at this late date to equalize the situation entirely," but what followed showed that this statement referred to a provision not in controversy herein. Further on the report stated that under the act of 1921 "it frequently happens that a taxpayer who owes the Government money upon which he is paying no interest is collecting interest upon money which the Government owes him." It then showed how this situation had been remedied by one of the provisions under consideration in the case at bar. We think this clearly shows an intent not to permit a taxpayer to collect interest from the government for a period during which he is shown to be indebted to it.

■ If, however, the construction which we have placed upon the statute following the decisions of the several courts which have so far passed upon the question be incorrect,

it by no means follows that plaintiff's case is sustained. Conceding for the purposes of the argument that plaintiff had the right to direct the application of the payment in the first instance, any such direction could be revoked or modified before the application of the payment was made, and we think that the evidence shows such a revocation.

After the payment had been made, plaintiff's attorneys came to Washington, and there was a long conference with the officials in the Commissioner's office. As a result of this conference, a waiver of the right to appeal to the Board of Tax Appeals from the decision of the Commissioner as to deficiencies as stated in the so-called "sixty-day letter" and a consent thereto, together with the overassessments set forth in the same letter, was signed by the plaintiff on April 2, 1928, and filed with the Commissioner of Internal Revenue on April 4, 1928. This waiver contained a list of the overassessments and deficiencies agreed to in parallel columns, specifying the year. It was the same as was contained in the sixty-day letter, except that it did not set out the balance or net deficiency, which was merely a matter of addition and subtraction. To this statement of the tax account of plaintiff was appended the following:

"This waiver of appeal and consent to assessment is given on the express condition that the overassessments shown above will be scheduled simultaneously with the assessment of the deficiencies shown above."

At the time of the execution of this waiver, the plaintiff was in a somewhat peculiar position. Its attorney knew that the payment made had not been applied on the 1920 deficiency and that the Commissioner intended to apply the *over*payments thereon. This is shown by the transactions between the parties and in particular by the fact that shortly after the filing of the waiver and without any further notice being received plaintiff's attorneys wrote the Commissioner a letter to which reference will hereinafter be made, in which it was contended that the overassessments could not be applied to the taxes of 1920. It could not well go on with its appeal to the Board of Tax Appeals on the 1920 assessment and at the same time claim that this assessment had been fully paid and the debt extinguished. It would practically give up nothing by executing the waiver on this matter, but it was important to finally and definitely secure the overassessments which had been listed in the preliminary

schedule sent plaintiff by the Commissioner and which aggregated nearly $5,000,000, and the waiver was probably executed by plaintiff's attorney with this in view. The government, on the other hand, had nothing to gain by the execution of a mere waiver, as the plaintiff had already practically admitted the correctness of the assessment by attempting to pay it, and naturally the Commissioner did not want to bind himself absolutely to the allowance of these huge refunds unless he got something in return for such an agreement. We think both parties were successful.

By the instrument which was signed containing the waiver the plaintiff got the overassessments definitely allowed and the Commissioner got the statement appended to the waiver, and also an agreement that the plaintiff "* * * consents to the assessment of the deficiencies upon the bases as to income, overassessments, and other adjustments set forth in said letter dated March 21, 1928; the years, amounts of deficiency, or overassessment as set forth in said letter being as follows:" (Here followed a similar statement of plaintiff's account for taxes as was contained in the Commissioner's letter of March 21, 1928, except that no balance was computed and listed as in that letter.)

By reference to finding 8 it will be seen that the amounts of overassessment for each year were listed in one column and the amounts of deficiencies for each year in another parallel column. In other words, it was a complete statement of the debit and credit items of plaintiff's tax account all agreed upon by both parties. It will be observed that not only were the deficiencies listed therein, including the deficiency for 1920, agreed to, but it was also agreed that they should be assessed, and when they were so assessed the overassessments were to be "scheduled simultaneously" with the assessment of the deficiencies.

We think this agreement clearly constituted a revocation or at least a withdrawal or modification of whatever directions or understanding accompanied the 1920 payment. But it is immaterial what it is called. The covenants of the agreement cannot be reconciled with plaintiff's claim that the 1920 deficiency was paid and that no indebtedness existed thereon. One of the bases of the former statement was that the deficiency for 1920 was due. It was specially agreed that the same bases should be used and that this particular deficiency for 1920 should be as-

sessed, which could mean nothing but that it stood as a liability on the part of plaintiff. Moreover, the plaintiff agreed that this deficiency should be included in a schedule of overassessments and deficiencies which the statute made final.

On April 24, 1928, the attorney for the plaintiff, apparently fearing that the result of the agreement would not be what his client desired, delivered to the Commissioner of Internal Revenue a letter at considerable length, the substance of which was that the plaintiff renewed its demand that the payment which had been made should be applied on the 1920 deficiency, and contended that this deficiency had been extinguished by such payment, by reason of which fact (as plaintiff claimed) there could be no credit of an overassessment on this deficiency. On the same day this letter was delivered the Commissioner scheduled the overpayments upon, and deficiencies in, plaintiff's taxes exactly in the manner agreed upon. The deficiencies, however, were placed in one list, which also showed the amount of interest charged against the plaintiff on the deficiency for each year. This was followed by a certificate that the deficiencies were due, and the whole signed by the Commissioner. The schedule of overassessments was in another list, separately made, and included the overassessments as stated in the waiver, and also made an interest adjustment on the additional tax for the year 1920 of $567,734.22.

We think it will be seen that the waiver agreement provided for the recognition of the existence of the deficiency for the year 1920 and its assessment and final determination, together with a simultaneous allowance of the overpayments. The whole proceeding as prescribed by the agreement was utterly inconsistent with plaintiff's claim that the 1920 deficiency had been extinguished, for, if the tax for that year had been wiped out by the payment, it could not be assessed, determined to be a deficiency, and made a debit item against plaintiff. No further discussion seems to be needed when attention is called to the fact that the agreement of the parties did not merely provide for the assessment of the tax for 1920, which would have been done as a matter of course, but also provided that it should be *listed as a deficiency* in the Commissioner's schedule of deficiencies and overassessments which definitely determined both. The Commissioner carried out the agreement to the letter, determined the deficiency for 1920, and made the final allowance of the overassessment simultaneously as stipulated.

This having been done, it was entirely immaterial that the plaintiff had made no express agreement that the overpayment should be credited on the 1920 tax. The law determined this, and the statute imperatively required that such a credit should be made.

Our conclusion, therefore, is that when the schedule was made in accordance with the agreement, the deficiency was due and the overpayments allowed. Such being the case, the statute, even under the construction contended for by plaintiff, left the Commissioner no discretion in the matter. It required him to credit the overpayments upon a deficiency, and he accordingly apportioned them among the several deficiencies against plaintiff listed in the schedule, including the deficiency of 1920. We think it clear that, even if plaintiff originally had the right to direct the application of the payment, such right was lost under the provisions of the so-called "waiver." It follows that the application of the overpayments for 1918 and 1919 to the deficiency of 1920 must be approved and the interest calculated accordingly.

█ It is urged on behalf of plaintiff that even under defendant's theory of the case there is additional interest due the plaintiff in excess of the amount allowed it, and this claim is not disputed. Each of the parties submits calculations of what it claims should be the proper amount of additional interest. Neither of these calculations is correct, although the error in the defendant's calculation is caused only by using the 4 per cent. rate (which is not now in force) instead of 6 per cent., the correct rate. The method of calculating the interest is practically settled by the case of the Irving Trust Co. v. United States, 72 Ct. Cl. 578. In accordance with the rule laid down therein we hold that the due dates of the 1920 taxes under section 250 of the 1918 act (40 Stat. 1082), by reason of the fact that the plaintiff had not elected to pay in one sum, were March 15, June 15, September 15, and December 15, 1921, and one-fourth of the deficiency was due at each of said dates. The case last above cited does not decide the precise question involved in the case at bar, but when the due date of the 1920 tax is fixed we think the remainder of the computation follows as a matter of course.

Under section 1116 (a), Revenue Act 1926 (26 USCA § 153 note), the whole of the overassessment for 1918 would draw interest from the date when paid. It was applied to the deficiency for 1920 which, as has already

been stated, came due in installments. $1,-093,755.91 was credited upon each of the first and second deficiency installments in satisfaction thereof, and the balance of $518,-283.57 in partial satisfaction of the third deficiency installment. Under the statute in each case interest would run from the time the overpayment was made to the time when the deficiency installment became due. The remainder of the third deficiency installment as well as the fourth installment was satisfied from the 1919 overpayment, as to which there is no controversy in regard to the matter of interest. We append a note showing the computation of interest accordingly.[2] The error on the part of the plaintiff is in allocating one-fourth of the 1918 overpayment of $2,705,795.39 to each of the 1920 deficiency installments and then computing interest in accordance with such application. We think there is neither reason nor authority for this proceeding, and that correctly computed the plaintiff is entitled to $31,954.75 in addition to the amount allowed by the Commissioner for which judgment will be rendered accordingly.

---

[2] Interest computation:
Interest on—
$1,093,755.91 from 12/15/19 to 3/15/21 (1 yr. and 3 mos. at 6%)........................ $ 82,031.69
$1,093,755.91 from 12/15/19 to 6/15/21 (1 yr. and 6 mos. at 6%)........................ 98,438.03
$518,283.57 from 12/15/19 to 9/15/21 (1 yr. and 9 mos. at 6%)........................ 54,419.78

Total ................................. $234,889.50
Less: Amount allowed by the Commissioner .................................... 202,934.75

Deficiency in interest which plaintiff is entitled to recover................. $ 31,954.75

WHALEY and WILLIAMS, Judges, concur.

BOOTH, Chief Justice, took no part in the consideration or decision of this case.

LITTLETON, Judge (dissenting).

I am of opinion that plaintiff is entitled to judgment for $1,655,420.26, being interest provided by law upon the overpayments for 1918 and 1919 from the dates paid to April 24, 1928, the date of the allowance of the overpayments and the credit thereof against taxes for 1921 and subsequent years. (1) A credit, within the meaning of the statute, does not occur until an overpayment is allowed. The allowance of the credit in this case was therefore April 24, 1928. (2) The liability for any tax in excess of that shown on the return for 1920 was a continuing obligation of the plaintiff and under the statute it had a right to pay the same and to direct its application. The payment and the directions that it be applied to the tax for 1920 were therefore valid, and the collector and the Commissioner were not authorized to ignore such directions and treat the payment as a payment on account of a tax for some other year. (3) The waiver of restrictions on assessment and collection filed April 4, 1928, was not a consent or agreement that the overpayments be credited against 1920 and that the payment made for 1920 be treated as a payment on account of taxes for other years. See Senate Finance Committee Report No. 52, Sixty-Ninth Congress, First Session, page 27, on the Revenue Act of 1926.