**CHICAGO TITLE & TRUST CO. v. UNITED STATES.**

No. 2962.

District Court, N. D. Illinois.

Dec. 15, 1941.

Merritt C. Bragdon, Wm. H. Avery, and Sidley, McPherson, Austin & Burgess, all of Chicago, Ill., for plaintiff.

324

J. Albert Woll, U. S. Dist. Atty., of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

May 14, 1941, complaint filed in this cause, wherein plaintiff seeks, under Title 28, § 41(20), U.S.C.A., to recover interest in the sum of $5,989.17, alleged to be due it because of an overpayment of $43,848.56 on account of estate tax, which overpayment was refunded to it on August 6, 1940. Plaintiff also seeks to recover interest accruing subsequent to that date on said item of interest.

July 15, 1941, defendant filed its answer in which it admits practically all of the material allegations of the complaint.

September 26, 1941, plaintiff filed its motion for judgment on the pleadings, and on November 3, 1941, defendant filed its motion for summary judgment.

The cause is now before me for disposition on the pleadings.

The facts substantially as admitted by both sides are:

That Edith Rockefeller McCormick died on August 25, 1932, and on November 25, 1933, plaintiff, as executor of her last will and testament, filed an estate tax return showing no tax due.

August 7, 1934, and after a field examination by a Revenue Agent, the Commissioner of Internal Revenue, by a thirty day letter, notified plaintiff of a tentative determination of a deficiency of estate tax in the sum of $370,350.85. Plaintiff did not acquiesce in the proposed deficiency tax, nor consent to the immediate assessment or collection of any part thereof, but on August 31, 1934, submitted to the Commissioner a protest against the same and a request for an administrative hearing. This protest was disposed of by the Bureau on June 19, 1936.

In the meantime plaintiff had received an advantageous offer for the sale of a certain diamond and emerald necklace belonging to the decedent's estate (and which had been reported in the estate tax return at the value of $183,966.13 on the date of decedent's death) provided the same could be sold free from the estate tax lien. On January 16, 1936, the Chicago attorneys for plaintiff telegraphed the Commissioner of Internal Revenue asking for a release of the estate tax lien upon the necklace in order that the proposed sale of same might be made. January 18, 1936, he sent the following telegram to the Chicago attorneys: "Reference telegram McCormick Estate. Certificate forwarded Collector Chicago for delivery upon payment of one-half tentatively determined deficiency tax."

February 6, 1936, plaintiff paid to the Collector of Internal Revenue at Chicago the sum of $185,175.43, being one-half of the tentatively determined deficiency estate tax made by the Commissioner on August 7, 1934, and thereupon received the Bureau's release of estate tax with respect to said necklace.

Plaintiff's protest with regard to the tentatively determined deficiency in estate tax in the sum of $370,350.85, having been disposed of by the Bureau of Internal Revenue on June 19, 1936, as above noted, on June 25, 1936, the Commissioner sent to plaintiff a ninety day notice of his final determination of an estate tax deficiency in the sum of $44,175.04. Plaintiff filed a petition with the Board of Tax Appeals for a redetermination of this deficiency tax, and also filed a claim for refund of the $185,175.43 theretofore paid by it. Thereafter plaintiff, by its counsel, and the Commissioner by his counsel, filed with the Board of Tax Appeals a stipulation agreeing that plaintiff's total tax liability amounted to the sum of $123,217.30; that interest thereon to February 6, 1936, was $18,109.57; that on February 6, 1936, plaintiff had already paid tax and interest in the sum of $185,175.43, and that the excess of that payment in the amount of $43,848.56 was an overpayment of tax. That the overpayment arose as follows:

Amount of overpayment due to reduction of tax liability $22,351.08

Amount of overpayment due to allowance of credit for State inheritance taxes, 21,497.48

In accordance with that stipulation the Board of Tax Appeals, on February 26, 1940, "ordered and decided that there is an overpayment in estate tax in the amount of $43,848.56, which was paid within three years before the filing of the petition. (Section 809(e), Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts page 1152)." The Commissioner then issued a Notice of Refund, and sent to plaintiff a check in the sum of $43,848.56, the principal amount of the overpayment without interest.

Plaintiff then wrote the Commissioner requesting that it be allowed interest on that portion of the overpayment due to reduction of tax liability only. The Com-

missioner replied that a certificate reflecting the allowance of interest in the amount of $5,989.17 had been approved and would be issued, but on November 1, 1940, the Commissioner again wrote that the Comptroller General had disapproved the allowance of this item of interest on the ground that the amount refunded was part of a deposit made in the nature of a cash bond to pay such tax as would later be determined, and no further action would be taken thereon by the Bureau.

This suit was then instituted to recover interest on $22,351.08, the portion refunded due to reduction of tax liability, at the rate of 6% from February 6, 1936, which had been determined by the Commissioner to amount to the sum of $5,989.17. Defendant agrees that this is the correct computation for this item of interest.

Defendant contends that the excess payment of $43,848.56 made by plaintiff was not an "overpayment of tax within the purview of Section 3711 [3771] Internal Revenue Code," which provides for the allowance of interest upon overpayments of revenue taxes, but rather that the excess payment in question constitutes a portion of what was in the nature of a cash bond or deposit to secure the payment of such taxes as would later be determined to be due upon decedent's estate.

Plaintiff contends that the payment of February 6, 1936, constituted an overpayment of estate tax, and therefore, under Section 3771 Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3771, it is entitled to interest thereon.

Title 26 U.S.C.A., Chap. 37, Sec. 3770 of the Internal Revenue Code, provides:

"Authority to make abatements, credits, and refunds

"(a) To taxpayers

"(1) Assessments and collections generally. Except as otherwise provided by law in the case of income, estate, and gift taxes, the Commissioner, subject to regulations prescribed by the Secretary, is authorized to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected."

Sec. 3771 of the same Act provides:

"Interest on Overpayments

"(a) Rate. Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 per centum per annum.

"(b) Period. Such interest shall be allowed and paid as follows: * * *

"(2) Refunds. In the case of a refund, from the date of the overpayment to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon."

Section 315(a) of the Revenue Act of 1926, as amended by Sec. 809, Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 827(a), provides that the estate tax, unless sooner paid, shall become a lien for ten years upon a decedent's gross estate, and then adds: "If the Commissioner is satisfied that the tax liability of an estate has been fully discharged or provided for, he may, under Regulations prescribed by him with the approval of the Secretary, issue his certificate, releasing any or all property of such estate from the lien herein imposed."

Pursuant to the authority granted to the Commissioner by Section 315(a) above, he promulgated Article 89 of Treasury Regulations 80(1937), which reads:

"Art. 89. Release of lien. The statute provides that if the Commissioner is satisfied that the tax liability of an estate has been fully discharged or provided for, he may issue his certificate releasing any or all property of the estate from the lien. * * * The primary purpose of such release is not to evidence payment or satisfaction of the tax, but to permit the transfer of property free from the lien in case it is necessary to clear title. Receipts for payment of the tax are issued by the Collector.

"* * * If the tax liability has not been fully discharged no general release of all property of the estate will be granted, but certificates releasing the lien upon particular items of property may be issued by the Commissioner, who may require as a prerequisite, in such an amount as he may designate, a partial payment of tax, or the furnishing of an indemnity bond with such surety or sureties as he may deem necessary. In lieu of such surety or sureties the indemnity bond may be secured by deposit of liberty bonds or other bonds or notes of

the United States in a sum equal to their par value to the amount of such bond."

It seems to me that this article of the Regulations definitely sets out the requirements of the Commissioner as prerequisites upon which a release will be issued. He may require (1) partial payment of the tax; or (2) the furnishing of an indemnity bond with such surety as he deems necessary; or (3) in lieu of such surety the indemnity bond may be secured by the deposit of liberty bonds or other bonds or notes of the United States. I find no mention of the deposit of money in the nature of a cash bond, and since the Commissioner himself promulgated the Regulations, if he had intended that the deposit of a cash bond should be one of the prerequisites I have no doubt he would have added it. Under Article 89 of the Regulations one of the prerequisites which the Commissioner might and did require before releasing the lien on the necklace in the instant case was "partial payment of the tax." The Commissioner accordingly notified plaintiff that "upon payment of one-half of the tentatively determined deficiency tax" the release would be issued. A cash bond seems not to have been discussed or suggested. The plaintiff paid one-half the tax, as required by the Commissioner, and received the release of the lien on the necklace. The transaction seems to have been treated as a partial payment of the tax by all of the Government representatives as well as the plaintiff in all of the negotiations concerning it, until October 10, 1940, when for the first time the Comptroller General, upon presentation to him of the check covering the interest on the refund, suggested that the amount paid to the plaintiff was a deposit in the nature of a cash bond, rather than a refund, and therefore plaintiff was not entitled to interest thereon, as provided by Section 3771. With this I do not agree. If the Commissioner had intended that the plaintiff should deposit a cash bond in order to secure the release of the necklace he would have required that, and not the payment of one-half of the tax, as was done. As I read the record contained in defendant's motion for summary judgment I am impressed with the fact that in none of the transactions there set out was a deposit in the nature of a cash bond under consideration or ever suggested or referred to by any of the parties, although there are many references to the payment of one-half of the tentatively determined deficiency tax.

The case of Atlantic Oil Producing Co. v. United States, Ct.Cl., 35 F.Supp. 766, 768, decided by the Court of Claims on December 2, 1940, was an action against the United States to recover interest on an overpayment of capital stock tax for the year 1936. The taxpayer, after securing an extension of time within which to file its return, paid to the Collector $30,000 on account of its tax liability in order to avoid the accrual of interest during the extension. Thereafter the taxpayer filed its return showing that a capital stock tax of only $15,000 was due. The excess payment of $15,000 was subsequently refunded without interest, and the taxpayer brought suit to recover interest on the overpayment, under Section 3771 of the Internal Revenue Code, which is the same section of the Revenue Code involved in the instant case. The court there said:

"The defendant [the United States] says the amount paid on June 30, 1936, was not an overpayment, but merely a deposit. It says that a payment is the delivery by a debtor to his creditor of the amount due in satisfaction of his debt, and that this $30,000 was not delivered in satisfaction of a debt and, therefore, was not a payment. Manifestly this is not the sense in which the word 'payment' was used. The act speaks of an overpayment, of a payment that more than satisfies the debt.

"The only requirement is that the payment be made 'in respect of any internal revenue tax.' Plainly, this payment was made 'in respect of' the plaintiff's capital stock tax liability. It was a payment of what the plaintiff estimated its tax liability to be. It was the payment of a liability then due, but the amount of which had not been ascertained. As it turned out, it was too great a payment; in other words, an 'overpayment.' Cf. Standard Oil Co. (Indiana) v. United States, Ct.Cl., 5 F. Supp. 976, 7 F.Supp. 301, 78 Ct.Cl. 714, certiorari denied 293 U.S. 599, 55 S.Ct. 116, 79 L.Ed. 692; Eastman Kodak Co. v. United States, 13 F.Supp. 435, 82 Ct.Cl. 504, certiorari denied 299 U.S. 581, 57 S.Ct. 46, 81 L.Ed. 428."

The Government cites the ruling of the Comptroller General No. A–48307; and Moses v. United States, D.C., 28 F.Supp. 817, in support of its contention. I am not in agreement with the conclusions reached in those two cases, and also the facts there are different than the facts in the instant case. In both of the cited cases

the payments were made voluntarily and at the suggestion and request of the taxpayer, and before there had been any tentative determination of a deficiency tax by the Commissioner, even before the filing of the return by the taxpayer; and in neither case had the Board of Tax Appeals previously ruled that the transaction involved an overpayment of tax.

I am of the opinion that the payment in question was the refund of an overpayment made "in respect of the internal revenue tax" of the plaintiff, and not a deposit in the nature of cash bond; and that plaintiff is entitled under Section 3771 of the Internal Revenue Code, to interest from February 6, 1936, to August 16, 1940, on $22,351.08, the portion of the overpayment due to credit on account of the reduction of tax liability, which both sides have agreed amounts to $5,989.17. Plaintiff's motion for judgment in this amount is allowed, and it may accordingly have judgment for $5,989.17.

Plaintiff's motion for judgment for interest on the above item of interest is overruled, and defendant's motion for summary judgment to this extent is allowed.