## LIBBY, McNEILL & LIBBY v. UNITED STATES.
### No. J—225.

Court of Claims.
Feb. 4, 1935.

G. Carroll Todd, of Washington, D. C. (Albert H. & Henry Veeder and Francis E. Baldwin, all of Chicago, Ill., and T. Hardy Todd, of Washington, D. C., on the briefs), for plaintiff.

J. H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen.

Before BOOTH, Chief Justice, and GREEN, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

The facts in the case are not in dispute. On November 20, 1929, the Commissioner of Internal Revenue signed a schedule of over-assessments, abatements, credits, and refunds in which was listed an overassessment in favor of the plaintiff in the amount of $159,227.67 for the year 1917. This schedule was transmitted to the collector with the usual instructions with reference to his action thereon. December 7, 1929, the collector signed and returned the schedule, showing that the full amount of the overassessment of $159,227.67 was an overpayment and that of the said overpayment $106,036.-15 had been credited, at plaintiff's request, against the fourth installment of plaintiff's original income tax for 1928, which did not become delinquent until December 15, 1929. There being no other outstanding assessments against plaintiff, $53,191.52 was certified as refundable. The collector returned the completed schedule to the Bureau of Internal Revenue and interest was computed on the credit and the refund amounting to $72,540.35 and $35,582.21, respectively. A certificate of overassessment showing the matter above stated was issued and sent to the plaintiff about January 13, 1930, together with a check for the interest on the credit, amounting to $72,540.35.

At the time the credit of $106,036.15 was made upon the 1928 tax and the check for $72,540.35 transmitted to the plaintiff, appeals by the plaintiff were pending before the Board of Tax Appeals from deficiencies in taxes determined for the years 1919 and 1925 in the respective amounts of $412,212.95 and $146,841.88. The Commissioner in

transmitting the schedule to the Comptroller General for an audit invited attention to these pending appeals. After the schedule had been examined by the Comptroller General, the amount shown thereon as refundable, $53,191.52, was deleted therefrom and that amount, together with the interest thereon of $35,582.21, was withheld to await the final determination of the Board of the appeal for the years 1919 and 1925.

On September 14, 1930, the Board entered an order determining a deficiency against the plaintiff for the year 1919 in the amount of $403,075.35. This deficiency, together with interest thereon in the total sum of $513,987.33, was assessed against plaintiff on September 27, 1930. October 3, 1930, the collector issued a notice and demand for payment thereof and the same was paid by the plaintiff on October 10, 1930.

Later the plaintiff requested payment of the balance of the 1917 overassessment which was being withheld together with interest thereon. On November 4, 1930, the Commissioner advised the plaintiff by letter that its account had been improperly adjusted; that the overassessment for 1917 should not have been scheduled until the appeal to the Board had been decided; that the entire overassessment for 1917 should have been credited against the deficiency determined by the Board for 1919; and that the collector had been instructed to readjust his records to correct the error. Pursuant to the instructions which he received from the Bureau, the collector changed his records as follows: He eliminated the credit of $106,-036.15 to the fourth installment of plaintiff's 1928 taxes and applied the entire overassessment for 1917 ($159,227.67) against the deficiency of $403,075.35 for 1919 which he treated as still existing, leaving a balance of $243,847.68 which was satisfied from the payment made by the plaintiff on October 10, 1930, as above recited. A recomputation of the interest assessable on the balance of the additional tax for 1919 in the amount of $243,847.68 was made by the Commissioner, resulting in the determination of $67,098.20, interest due on the balance, instead of $110,-911.98 previously determined and included in the payment of October 10, 1930. The difference in interest to the amount of $43,813.-78 was stated to be "available for payment of the balance of the 1928 tax in the amount of $2,954.92 and for application to the taxpayer's 1929 account." Upon this basis there would remain $40,858.86 which was retained by the government and which it was stipulat-

ed plaintiff was entitled to have refunded as an excess payment.

Upon the foregoing facts the plaintiff seeks to recover $53,191.52, being the balance of the 1917 overpayment after deducting the amount credited on the 1928 tax together with interest thereon as provided by law. The defendant contends that the plaintiff is not entitled to recover any amount whatever notwithstanding the stipulation entered into by the parties.

It will be observed from the facts recited above that after the Commissioner had allowed the overpayment for 1917 he applied part of it to a deficiency determined in the taxes for 1928 and certified the balance of $53,191.52 for refund. At the time this was done a deficiency in 1919 taxes had been determined and appeals had been taken by the plaintiff from this determination to the Board of Tax Appeals. Before anything further was done by the Commissioner in the way of changing this ruling, the appeal was decided, a deficiency determined for 1919 aggregating with interest $513,987.33, and upon notice and demand by the collector the plaintiff paid the amount of this tax in full.

It is insisted on the part of the plaintiff that after this payment was made the Commissioner had no right or authority to set aside the application which he had made of the overpayment upon the 1928 taxes and to also set aside the application of the payment upon 1919 taxes and apply the overpayment thereon. The defendant, on the contrary, argues that the Commissioner had a perfect right to set aside his ruling and action in applying the overpayment on the 1928 taxes and that he had equal authority to set aside the application of the payment on the 1919 taxes and then apply the overpayment thereon. Counsel for each side cite many cases in support of their respective positions. Among others, there is cited on behalf of the plaintiff a number of cases determining the effect of a decision of an administrative board created under a special statute and acting in a quasi judicial capacity. We think those decisions have no application here. Counsel for defendant rely largely on Burnet v. Porter, 283 U. S. 230, 51 S. Ct. 416, 75 L. Ed. 996, wherein the Supreme Court held that the Commissioner might set aside an allowance for a refund and it is urged that the allowance of a credit is as much subject to redetermination as the allowance of a refund. There is much force in this argument, but we do not find it necessary to determine this question in order to decide the case which is before us. Conceding for the purposes of the argument that the Commissioner in the first instance could have set aside the application of the overpayment for 1917 on the 1928 taxes and put it upon the 1919 deficiency which, in our opinion, was due when it was determined if not before, this does not dispose of the principal obstacle to the defense.

■ The question of whether the Commissioner could set aside the payment of the 1919 taxes depends upon altogether different facts and entirely different principles. At the time the Commissioner undertook to change his records, the 1919 deficiency had been paid, and there was nothing owing upon it. As the situation then stood, there was no error or mistake in the collection of the 1919 taxes. The amount thereof had been adjudicated by the Board of Tax Appeals, the taxes had been properly assessed, and when the collector sent out a notice and demand for their payment he did only what he had the right and the authority to do. It was his duty to collect taxes that were outstanding and had no set-off against them, and there was none at this time. When the plaintiff in response to this notice and demand paid these taxes and payment was applied thereon, the debt was extinguished, and there were no taxes of 1919 thereafter upon which an overpayment could be applied. If plaintiff had not complied with the demand and paid the tax, it would have been subject to a heavy penalty. The transaction was not simply the action of a government official which was revocable, it included a proper demand upon the plaintiff followed by payment by the plaintiff of a tax that was due and acceptance thereof by the proper official. There was an accord and satisfaction between the parties with no fraud or mistake involved therein to vitiate it. After this had been done, we are constrained to hold that the Commissioner could not set aside the application of the overpayment on the 1928 taxes and apply it upon the 1919 deficiency as that no longer existed.

The situation is very different from cases such as York Safe & Lock Co. v. United States, 40 F.(2d) 148, 69 Ct. Cl. 529; Standard Oil Co. v. United States, 5 F.Supp. 976, 78 Ct. Cl. 714; McCarl, Comptroller General, v. United States ex rel. Leland, 59 App. D. C. 362, 42 F.(2d) 346; and Lucas, Commissioner, v. United States ex rel. Blackstone Mfg. Co., 59 App. D. C. 389, 45 F.(2d)

680

291. These are cases in which the plaintiff sought to have a payment applied or an overpayment credited in a certain way, and the Commissioner refused so to do. The Commissioner, instead of complying with the taxpayer's request, applied the payment on other taxes due and such action was upheld by the courts. The decisions made in these cases have no application here.

■ One other point perhaps ought to be noted. The findings show that after the items of plaintiff's tax account had been readjusted and rearranged by the Commissioner there still remained under the Commissioner's own figures $40,858.86, which was withheld by the government and by stipulation conceded to be due the plaintiff. Counsel for defendnat now contend that the plaintiff is not entitled even to this last-named sum for the reason, as we understand the argument, that the overpayment for 1917 had been applied on the deficiency for 1919 and thus had become an overpayment for that year. No application for refund for 1919 was filed and it is therefore contended that the plaintiff can recover nothing. This contention ignores the fact that the plaintiff is suing to recover part of an overpayment on taxes of 1917 for which a refund claim was duly filed. It is true that the Commissioner undertook to apply this overpayment on the deficiency for 1919, but we have held above that at the time the Commissioner so acted the 1919 taxes were paid and settled and consequently that the Commissioner could not lawfully make such an application. In other words, his action was a mere nullity. Nor could he then set aside his original application of a part of the overpayment to the taxes of 1928, for there were no taxes for any other year then due. After the application of a part of the overpayment to the 1928 taxes, there still remained $53,191.52 due plaintiff with interest thereon as provided by law. We might state some further objections to this defense, but we think it is not necessary.

Judgment will be rendered in favor of the plaintiff for $53,191.52 with interest as provided by law.

BOOTH, Chief Justice, and WILLIAMS, and LITTLETON, Judges, concur.

WHALEY, Judge, took no part in the consideration or decision of this case.