### EASTMAN KODAK CO. v. UNITED STATES.
### No. M-81.

Court of Claims.
Feb. 3, 1936.

448

O. R. Folsom-Jones, of Washington, D. C. (Hubbell, Taylor, Goodwin, Nixon & Hargrave, of Rochester, N. Y., and Brewster, Ivins & Phillips, of Washington, D. C., on the brief), for plaintiff.

J. A. Rees, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff, a New Jersey corporation, sues to recover additional interest on an overpayment of its income and profits taxes for the calendar year 1918. The facts giving rise to this controversy, involving plaintiff's tax liability for a series of years, are set forth in detail in the findings. We do not find it necessary to repeat them in this opinion, for the vital issue in the case is confined to certain specific determinations and official actions of the collector and Commissioner of Internal Revenue in adjusting plaintiff's returns and claims respecting its tax liability for the years involved.

Plaintiff's income, excise, and profits tax returns for the calendar years 1909 to 1920, inclusive, were timely filed with the collector at Rochester, N. Y., and following certain adjustments made with respect thereto the taxes disclosed by those returns were paid.

On November 25, 1925, the Commissioner mailed plaintiff a 30-day letter showing a summary computation of its tax liability for the years 1909 to 1919, inclusive. This computation stated additional taxes for the years 1909 to 1919, exclusive of 1918, of $1,289,095.42 and an overassessment for 1918 of $3,145,338.89.

Inclosed in the November letter was a form of agreement consenting to assessment of deficiencies, and this agreement plaintiff executed, stating, however, that

its consent thereto was "conditional upon the issuance of a certificate of overassessment for the year 1918 as indicated in the letter above referred to contemporaneously with the assessment of the deficiency."

The Commissioner did not assess the additional taxes set forth in the November letter until September, 1926, over eight months after the receipt of plaintiff's consent thereto. During this interval, however, on July 28, 1926, plaintiff filed with the collector amended tax returns for the years covering the stated deficiencies, seven in all, and accompanied these returns with seven separate checks attached thereto for the full amount of the additional tax computed for each taxable year, stating at the same time that its intent and purpose was to pay the additional taxes and thus avoid accumulation of interest thereon.

The collector received plaintiff's checks, cashed them, and deposited the proceeds in what is known as his 9—D account. The collector had received no assessment of the additional taxes, and the amended returns were misplaced, and hence, following the usual procedure in such cases, the payments went into his 9—D account to await a schedule of assessments from the Commissioner with respect thereto. Later, when the assessment list and schedule of overassessments for 1918 were received by the collector, $1,207,619.62 of the overpayment for 1918 was applied as a credit on the unpaid balance of plaintiff's original taxes for 1920 in that amount, and the sum in his 9—D account applied to the payment of 1909 to 1919 deficiencies shown on the assessment list for those years. The balance, $126,790.40, together with computed interest of $193,877.93, or a total sum of $320,668.33, was scheduled for refund.

The facts are as follows, and no dispute obtains with respect to them: During the entire course of the above adjustment, appropriate entries were made upon the records of both the collector and the Commissioner, disclosing the facts as stated. The Commissioner approved and signed a completed schedule of refunds and credits showing the collector's disposition of the overpayments and deficiencies as above. It was submitted to the Comptroller General in due course, returned to the Bureau by that official without change, and was ready for transmission to the disbursing clerk of the Treasury Department for payment of the refund, but was never paid as then scheduled.

The reason for the nonpayment of the refund as scheduled resides in the fact that prior to the time of its transmission to the disbursing officer of the Treasury for payment the Sixty-Ninth Congress enacted its First Deficiency Act, 44 Stat. 1250, approved February 28, 1927, and, in addition to appropriating $175,000,000 to pay refund claims, inserted a provision that no portion of the sum appropriated should be available to pay any such claim in excess of $75,000 until after the expiration of 60 days from the date such an allowed refund had been submitted in detail to the Joint Committee of Congress on Internal Revenue Taxation.

This new legislation necessitated the elimination of plaintiff's refund from the Commissioner's schedule of refunds, abatement, and credits which was to be transmitted to the disbursing clerk of the Treasury for immediate payment, and this was accomplished by clerks assigned for the purpose to the accounts and collections unit of the Bureau, "ruling a line in red ink" through the items of plaintiff's refund as they appeared on the schedule. This method of eliminating refunds in excess of $75,-000 from the Commissioner's schedule of refunds was adopted in order to facilitate the disposition of the additional refunds appearing thereon involving less than that sum.

On August 29, 1927, the Commissioner addressed a letter to the collector at Buffalo, N. Y., in reference to the adjustment previously made of plaintiff's tax liability and the amount of interest allowable on the certified overpayment for the year 1918. The Commissioner in the following language called the collector's attention to the fact that he had not followed established procedure in scheduling the adjustment, viz.:

"Investigation discloses that at the time the overassessment was determined, deficiencies in tax for the other years were also determined against this taxpayer and the Eastman Kodak Company of New York with which it is affiliated, notice being given the taxpayer of the proposed adjustment in Bureau letter dated November 25, 1925. The assessments of the deficiencies are listed on the Sept. 1926 Comm's. list, Sp. No. 4.

"Inasmuch as the overassessment and deficiencies above mentioned constituted one adjustment, in accordance with the established procedure of this office the over-

assessment should have been credited before any adjustment other than abatement had been made.

"In view of the unusual circumstances in the case it is deemed advisable to allow the adjustments as made by your office on schedule IT—22359 to stand, but interest will not be allowed by this office on the basis of such an adjustment. In the computation of interest, this office has considered the additional taxes for the year 1909 to 1919, in the total amount of $1,298,868.63, as having been paid by credit, the balance of the overassessment being applied to original 1920 tax, the remainder of which is fully accounted for by actual payments made. Under such an adjustment it is obviously unjust to require the taxpayer to pay interest on the deficiencies assessed, and it is suggested that forms 844 in the amount of $32,974.24, covering the amount of interest paid on these deficiencies, be prepared and forwarded to this office for allowance.

"It is suggested that a copy of this letter be attached to the 844, when forwarded to this office."

In May, 1928, the Commissioner prepared a supplemental schedule of overassessments, abatements, and refunds, and in so doing computed the interest upon plaintiff's overpayment of taxes for 1918 by crediting the overpayment against the additional taxes for the years 1909 to 1919, crediting so much of the balance as was necessary against the balance remaining unpaid of plaintiff's original tax for the year 1920, and refunding the amount remaining, resulting in an interest allowance of $22,792.12 and a total refund of $149,582.52, which sum was paid to plaintiff on June 1, 1928.

September 19, 1928, plaintiff received in accord with the Commissioner's letter of August 29, 1927, a final refund payment of $36,444.99, reserving at the time the right to demand an additional sum alleged as due by way of interest on the overpayment of its 1918 taxes as stated in the present petition. The difference between the amount of interest allowed and now claimed is stated as of the date of filing plaintiff's petition to be $471,919.19. An additional item in suit will be referred to later in this opinion.

The principal issue is aptly stated in plaintiff's brief as follows:

"Whether the 1918 overpayment of taxes was or could be credited to any unpaid taxes except the original unpaid taxes for 1920."

The issue thus stated necessarily comprehends a decision as to whether the plaintiff might, as it undertook to do, pay the additional taxes stated as due for the years 1909 to 1919, and thereby preclude the Commissioner from resorting to any other fund than the 1918 overpayment to liquidate the unpaid balance of the original tax for 1920, for, obviously, if this adjustment could not be accomplished, the computation of interest made by the Commissioner was erroneous.

This court in the case of the Standard Oil Co. of Indiana v. United States, 5 F. Supp. 976, 7 F.Supp. 301, 78 Ct.Cl. 714, certiorari denied 293 U.S. 599, 55 S.Ct. 116, 79 L.Ed. 692, had this precise question before it, as well as in a case previously decided, i. e., York Safe & Lock Co. v. United States, 40 F.(2d) 148, 69 Ct.Cl. 529, certiorari denied 282 U.S. 839, 51 S.Ct. 21, 75 L.Ed. 745. True, the facts are not in all respects similar, but in the cases cited, as in the instant one, the determinate factor which brought about the conclusions reached hinged upon the issue of a voluntary payment of additional taxes for a series of years in order to forestall an accumulation of interest thereon and thereby collect a larger sum in interest upon an overpayment for one of the taxable years.

This court in ruling adversely to plaintiff in the Standard Oil Co. Case, 5 F.Supp. 976, 985, 7 F.Supp. 301, 78 Ct.Cl. 714, 734, said:

"Plaintiff's contention is that it had the right to direct the application of the payment which it made to the collector, and when it was made it absolutely extinguished the indebtedness on the 1920 deficiency; that the overpayments could not afterward be applied on a deficiency for 1920 because there was nothing 'then due' as specified in section 284 (a) of the 1926 act quoted above; and for the same reason, after the payment was made, there remained no taxes for 1920 against which a credit could be taken under the provisions of section 1116 of the same act.

"It will be seen as the discussion proceeds that, if plaintiff's theory is sustained, there will not only be cases where the taxpayer will be entitled to interest for a period during which he is indebted to the

government as in the instant case, but in some instances the taxpayer will be able to sue the government for a refund and obtain a judgment, although he is actually owing a balance to the defendant at the time when suit is begun and when judgment is rendered. Certainly Congress never intended such a result, and we do not think a court should lend its support to a doctrine which would bring it about unless required so to do by clear and unambiguous provisions in the statutes applicable thereto.

"The defendant, on the other hand, insists that plaintiff had no right to direct the application of the payment upon the 1920 taxes, and, as it was not so applied, this item of indebtedness to the government was not extinguished, but continued in full force and effect until the overpayments were allowed and applied upon it."

The cases cited in plaintiff's brief do not support a contention that an adjustment by the Commissioner of tax liability for a series of years, evidenced at the time by appropriate book entries upon the records of the collector and Commissioner, irrevocably determines the government's liability either to make refunds or compute interest on an overpayment in accord therewith. On the contrary, it is our view that, so long as the Commissioner keeps within the provisions of the revenue law, he may subsequently cancel, amend, or substitute another adjustment for the previous one, and the final determination establishes his official act. Book records are obviously subject to challenge by either the taxpayer or the government.

This case exemplifies in a marked degree the futility of predicating a governmental liability for a tax or interest refund upon any other basis than the revenue laws. Irrespective of book entries or interdepartmental documentary evidence of tax adjustments, confused and contradictory as they were in this case, the issue to determine is, Did the revenue laws authorize the Commissioner to dispose of plaintiff's tax liability in any other manner than the final disposition made by him? This court, in the York Safe & Lock Co. Case, supra, held that a provision of the statute with respect to the crediting of an overpayment of a tax against any tax due is mandatory. The original certificate of overassessment for the year 1918 (finding XXIII) delivered to plaintiff, accompanied by a check in payment of the refund allowed, discloses upon its face an error of computation of interest so obvious that the most casual examination of the same would at once inform the recipient that no such adjustment of plaintiff's tax liability as stated therein had been made. Assuredly, documents of this character may not form the basis of a legal liability to observe the same. If the law allows the plaintiff to pay deficiencies prior to their assessment, when additional tax liability remains undetermined, and by so doing precludes the Commissioner from proceeding as he did in this case, then plaintiff is entitled to recover. The one and only basis for a judgment in favor of plaintiff must rest exclusively upon an adjustment originally made as evidenced by the documentary proof offered, which was subsequently reversed and final adjustment and payments made, as stated in the findings.

In view of the foregoing, we are of the opinion that the action of the Commissioner should be sustained in computing interest on the overpayment for 1918 on the basis that the overpayment for that year was first applied in satisfaction of the deficiencies for the years prior to 1918 and for 1919, and the balance applied as a credit on the outstanding tax for 1920, and that the cash payments, to the extent required, were payments in satisfaction of the balance of the outstanding tax for 1920.

In addition to interest on the overpayment for 1918, there is also involved interest on an overpayment for 1920. Subsequent to the determination of the overpayment for 1918 and the deficiencies for years prior to 1918 and for 1919 and the application of the overpayment and certain cash payments in the manner detailed in our findings, the Commissioner determined an overpayment for 1920 of $922,137.66, which was refunded to plaintiff in April, 1930. It appears, however, that in computing interest on the overpayment the Commissioner has erroneously computed interest from September 30, 1926, the date the certificate of overassessment was signed on which the overassessment of $3,145,338.89 for 1918 was shown, instead of from what we think is the correct starting point, namely, July 28, 1926, the date on which the cash payments were received which were used to satisfy that part of the outstanding tax for 1920 which had not been satisfied from the overpayment for 1918. We have heretofore sustained the defendant's contention that interest on the overpayment

for 1918 of $1,367,384.26 ($3,145,338.89 overassessment, less $1,777,954.63, amount abated for 1918) should be computed on the basis that that overpayment was first applied in satisfaction of the deficiencies for the years prior to 1918 and for 1919 and the balance applied as a credit to an outstanding tax for 1920. In sustaining that contention, it also followed that the cash payments which were received from plaintiff July 28, 1926, for the alleged purpose of satisfying the deficiencies referred to above, must be considered as having been used, to the extent necessary, in payment of an outstanding tax for 1920. The amount of the cash payments thus used was in excess of the refund of $922,137.66, and in our opinion interest on that refund should be computed on the basis that the amount from which it was paid had been paid by plaintiff July 28, 1926, instead of September 30, 1926. It was on the former date that the cash was received by the government and constituted a payment at that time. Interest should accordingly be computed from July 28, 1926, instead of September 30, 1926, the date used by the Commissioner. When that correction is made, additional interest will be shown due plaintiff of $9,524.54, for which sum plaintiff will be awarded a judgment. It is so ordered.

GREEN, Judge (concurring).

The case appears to turn on the question of whether the Commissioner was bound by the entries made on the collector's books.

In the case of the Standard Oil Co. of Indiana v. United States, to which reference is made in the foregoing opinion, this court cited with approval a line of cases holding in effect that, where there were several deficiencies in a taxpayer's account, the Commissioner had the right to select the one upon which an overpayment should be applied, and held that the statute should not be so construed as to require the payment of interest to a taxpayer for a period during which he was in fact indebted to the government. But this is just what the plaintiff seeks to have done.

Counsel for plaintiff contend that, if the Commissioner had such a power, he exercised it when the entries were made upon the collector's books and approved by the Commissioner in the schedule of refunds and credits, that these entries are final and conclusive, and that, when made, the Commissioner lost all control over the case ex-

cept to carry these entries into effect. With this conclusion I do not agree. In the case of Oak Worsted Mills v. United States, 36 F.(2d) 529, 68 Ct.Cl. 539, it was contended by the plaintiff that the Commissioner, having determined its tax liability, was without authority to revise it, but, after a somewhat elaborate discussion of the question so raised, the court held in the supplemental opinion that, until the case was closed, the Commissioner could change any of his rulings and determinations. Of course, a case could be closed by the statute of limitations, by the acceptance of an account stated, or by final settlement in accordance with statutory provisions. But none of these matters appear here.

In my view, the books of the collector are kept merely for his own convenience and those dealing with him, including the government officials and the taxpayers. The collector cannot trust to recollection the condition of the many thousand tax cases of which he has charge, nor could he properly perform his duties unless he kept a record of the advice and information he received from the Commissioner in such form and with such indexes as would enable him upon a few moments' notice to give out or himself make use of the information therein contained. It is now well settled that the Commissioner may change an assessment he has made even after he has paid a refund. If his action in paying a refund was mistaken and erroneous, a suit may be maintained within the period of limitations to recover it, and, if he can do all of these things notwithstanding the entries on the collector's books and the approval of a schedule of refunds and credits, I can see no reason why any of such entries should be binding here.

The conclusions expressed above, if correct, dispose of the other contentions made by plaintiff. It is urged that there was nothing due on the taxes for other years upon which the Commissioner finally applied the overpayment. But here again I think nothing had been done which was conclusive against the defendant. The Commissioner could, as I think, rescind his approval of the schedule of refunds and credits and order the application of the payment in an altogether different manner as he subsequently did.

Nor do I think there was anything binding upon defendant in the certificate of overassessment (referred to in the dissenting opinion) which was delivered about

June 1, 1928, to plaintiff, together with a check for what the Commissioner claimed was due. This original certificate of overassessment was a schedule of refunds and credits and a statement of plaintiff's tax account. It showed the total overassessment, the amount abated, the credit of $1,-207,619.62 of the remaining overassessment of tax and of $32,974.24 interest assessed for 1918 on the tax due and unpaid for 1920; also that there was $126,790.40 refunded together with interest in the amount of $22,792.12, making a total of $149,582.-52. (See finding XXIII.) A check for this total amount was transmitted with the certificate of overassessment. Just how or why the collector came to send to plaintiff this original certificate of overassessment which he must have known was incorrect does not appear from the testimony. Finding XXIII shows that in May, 1928, a new schedule of overassessments, abatements, and credits, called a supplemental schedule of overassessments, was prepared in which a different application was made of the overassessment and payment, and that it was in accordance with this schedule that the amount to be refunded plaintiff of $126,790.40 and $22,792.12 interest on the refund and credit was computed. The Commissioner signed this supplemental schedule May 26, 1928, and authorized the disbursing clerk of the Treasury to make payment accordingly. It may be that this supplemental schedule never went to the collector. But the collector received the original certificate of overassessment in 1926 and had advised the Commissioner that it was not correct in certain particulars. About August 29, 1927, the collector received a letter from the Commissioner in which he was advised that the application of the credit and payment would not be made in the manner stated in the original certificate of overassessment (see finding XXII) and thereafter the Commissioner computed the interest in accordance with this letter (see finding XXIII). This was nearly a year before the collector forwarded the original certificate (with some additional figures thereon) to the plaintiff together with a check for the refund. It would seem that by some singular mistake and inadvertence the collector overlooked the fact that the original certificate of overassessment had been entirely set aside. Whether the collector had received the supplemental schedule is, as I think, immaterial, but, in view of the advice he had received from the Commissioner, it is strange that he should have sent the original certificate to the plaintiff.

The Commissioner had the right to change and correct the original certificate by the supplemental certificate, and he even made a further correction in the original certificate, as shown by finding XXIV, by which $32,726.71, together with $3,718.-28 interest thereon, was refunded to plaintiff on September 19, 1928. The plaintiff received the payment under protest, claiming that it was entitled to a much larger sum and filed a claim for refund.

March 14, 1930, the Commissioner, after further consideration of plaintiff's return for 1920, approved another schedule of overassessments, as shown in finding XXVI, under which the plaintiff was shown to be entitled to a refund on taxes of 1920 of $922,137.66 and $195,467.92 interest, or a total of $1,117,605.58. A check for the total amount was forwarded to plaintiff, together with a certificate of overassessment and accompanying explanatory schedules.

Before this last schedule was prepared and on February 28, 1929, the plaintiff sent a demand to the Commissioner for the allowance of additional interest for the year 1918, and June 25, 1930, the plaintiff transmitted a further demand to the Commissioner with reference to the allowance of additional interest on the overpayment for the year 1918 and a request for further allowance of interest upon the overpayment of taxes for 1920. September 5, 1930, the Commissioner made his last ruling, and took, so far as he was concerned, final action on plaintiff's claim by refusing to compute, allow, or pay any further interest in addition to the amounts theretofore allowed and paid for the years 1918 and 1920.

It will thus be seen that plaintiff refused to accept, not only the statement of account made in what is known as the original certificate of overassessment, but all other statements rendered by the Commissioner as stated above; and, although it retained the checks received for interest, claimed that a much greater amount was due. Under these circumstances, I think it quite clear that the tax account between plaintiff and defendant, instead of being closed by the delivery of what is called the original certificate of overassessment, remained unsettled and various revisions were subsequently made by the Commissioner. If we were to consider merely the original certificate of overassessment, it will be observed

454

that the plaintiff refused to accept it as correct, particularly objecting to the amount of interest allowed; and, while the various items in this account cannot be reconciled, I do not think this authorizes the plaintiff to pick out one or more items thereof and say that those items are binding upon the opposite party but that none of the account, except what it selects, is binding upon itself.

No settlement at any time having been reached between plaintiff and defendant, the case has not been closed. In my opinion, it now comes before us to determine how much interest was in fact and law due the plaintiff. This, I think, has been correctly decided by the opinion of the CHIEF JUSTICE.

Attention is called to the fact that the entries upon the books of the collector still stand. Perhaps it would have been better to have had them corrected in accordance with the action finally taken. The Commissioner considered he was not bound by the entries, and evidently thought it was not worth while to correct them. This was bad bookkeeping, but does not affect the decision. Between the Commissioner's office and that of the collector, the plaintiff's tax account was badly muddled, but this furnishes no reason why the plaintiff should be allowed interest for a period during which it was indebted to the government.

WHALEY, Judge, concurs in both of the foregoing opinions.

LITTLETON, Judge (dissenting).

I think this case is distinguishable from Standard Oil Co. of Indiana v. United States, 5 F.Supp. 976, 7 F.Supp. 301, 78 Ct.Cl. 714.

In the case at bar plaintiff paid to the collector the taxes for the years 1909 to 1919, inclusive, and specifically designated such payments as the taxes for those years. The collector advised the Commissioner thereof, and in due course the Commissioner made a formal assessment of the taxes, which assessment was transmitted to the collector, who, in the usual manner, applied the payments as made to the taxes assessed for 1909 to 1919, inclusive. Within a short time the Commissioner signed a schedule of overassessment of $3,145,338.89 for 1918 and sent this schedule to the collector, with the usual instructions to abate such portion of the overassessment as had not been paid, to credit such portion thereof as might be

found to be an overpayment to any outstanding taxes then due and unpaid, and to report what portion, if any, should be refunded, and disclose such action on a schedule of abatements, refunds, and credit.

At the same time this overassessment schedule was sent to the collector, the Commissioner disallowed a claim for abatement for an outstanding assessed and unpaid original tax for 1920, of which disallowance the collector was advised. Upon receipt of this overassessment schedule showing the overassessment for 1918, as above, the collector, in compliance with the instructions on the schedule, abated $1,777,-954.63 which had been assessed but not paid, and, of the balance, credited $1,207,-619.62 and $32,974.24 (the last amount being interest which had been assessed for 1918) to the unpaid tax due and assessed for 1920 and reported the balance of the 1918 overassessment of $126,790.40 as a refund due the plaintiff. The action of the collector was approved by the Commissioner, and subsequently the Commissioner in a letter to the collector advised him that no change should be made in the entries as made on his books, but that he (the Commissioner) would not pay interest in accordance therewith. Thereafter the Commissioner computed the interest as though the 1918 overpayment had been credited to the taxes assessed for 1909 to 1919, inclusive, when such was not the fact and as if the payments which had theretofore been made by plaintiff for 1909 to 1919 and so applied by the collector had been paid and applied in satisfaction of the tax assessed and unpaid for 1920, which was also not the fact. After so computing the interest and preparing a Treasury check for $22,792.-12, interest resulting from such computation, together with the amount of $126,790.-40 shown as refundable, totaling $149,582.-52, the Commissioner prepared a certificate of overassessment for 1918 addressed to the plaintiff advising it of the total overassessment of $3,145,338.89 for that year and also advising it that of this overassessment $1,-777,954.63 had been abated, that $1,207,-619.62 of the remaining overassessment of tax and $32,974.24 (interest assessed for 1918) had been credited against the tax due and unpaid for 1920, and that the balance of the 1918 overassessment of $126,-790.40 was refunded. This statement of the account for 1918 and 1920 was delivered to the plaintiff June 1, 1928. In these circumstances I think the law directs how

the interest shall be computed and is mandatory as to the amount to be paid.

Plaintiff claims that interest should have been computed and paid on the overpayment for 1918 credited to 1920 from the date of such overpayment to the due date of the 1920 tax. This claim of plaintiff is strictly in accordance with the credits as made and the notice and statement of account prepared by the Commissioner and delivered to the plaintiff. It is not important, I think, that plaintiff did not receive a formal notice from the collector or the Commissioner that the payments which it had made for the years 1909 to 1919 had been applied to the additional taxes assessed for those years. It was obvious, and plaintiff knew when it received the Commissioner's final notice and advice that the 1918 overpayment had been credited to the 1920 tax, that the payments which it had previously made for the years 1909 to 1919 had satisfied the taxes for those years. The plaintiff had previously received notice of the assessment of taxes for 1909 to 1919, and was, of course, aware that it had already paid them. In these circumstances I am of opinion that plaintiff should have judgment for the full amount of the interest claimed, which is the interest directed to be paid by the statute on the credit as actually made.

WILLIAMS, Judge, concurs in this view.