HARNISCHFEGER CORPORATION v. UNITED STATES.

No. 42099.

Court of Claims.

Dec. 7, 1936.

212

Allen H. Gardner, of Washington, D. C. (Morris, KixMiller & Barr, of Washington, D. C., and Arnold R. Barr, of Chicago, Ill., on the briefs), for plaintiff.

John W. Hussey, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The plaintiff brings this suit for interest on alleged overpayments of income taxes for the year 1918 and 1919 which it claims were refunded to it. The controversy arises in the following manner:

Prior to and during 1927, the Commissioner of Internal Revenue had under consideration the returns of the plaintiff for the years 1918, 1919, and 1920, and, as a result of his audits, he determined an overassessment for 1918 of $80,072.44, an overassessment for 1919 of $1,764.11, and a deficiency for the year 1920 of $100,442.20. On January 13, 1927, a 30-day determination letter was sent to the plaintiff showing the above overassessments and deficiency and notifying plaintiff that the overassessments would be credited to the deficiency in accordance with section 284 (a) of the Revenue Act of 1926 (44 Stat. 66). On March 16, 1927, a 60-day letter was sent to the plaintiff advising it of the proposed overassessments and deficiency and notifying it of its right of appeal to the United States Board of Tax Appeals so far as the deficiency was concerned. On May 13, 1927, prior to the expiration of the 60 days, plaintiff voluntarily delivered to the collector its check for $100,442.20, the exact amount of the proposed deficiency for 1920, and indicated on the check that payment was being made under protest. At that time the deficiency had not been assessed, and therefore the collector, in accordance with the usual procedure, entered this amount in his suspense account awaiting instructions of the Commissioner. The following day the plaintiff filed its petition with the Board of Tax Appeals, asking for a redetermination of the proposed deficiency. On May 24, 1927, at a conference with a deputy commissioner of Internal Revenue, plaintiff requested that the overassessments for 1918 and 1919 be scheduled, and, if found to be overpayments, that they be refunded in full, with interest, since a check for the full amount

of the proposed deficiency for 1920 had been deposited with the collector. The Commissioner refused to accede to plaintiff's request, for the reason that the deficiency for 1920 was before the Board of Tax Appeals for determination and, when finally determined, he intended to apply the overassessments for 1918 and 1919 as a credit against the deficiency for 1920 and make payment to the plaintiff of the net balance due (if any) with the appropriate adjustment of interest. When the Commissioner was notified by the collector that the taxpayer had voluntarily paid the full amount of the proposed deficiency, the Commissioner instructed the collector to hold this amount as a cash bond, for the reason that the plaintiff had taken an appeal to the Board of Tax Appeals for a redetermination. The Commissioner also notified the taxpayer that this amount, voluntarily paid in to the collector, would be treated as a cash bond awaiting the decision of the Board of Tax Appeals on the amount of the deficiency for the year in question. However, having in his possession funds in the amount of the overassessments for 1918 and 1919, amounting to some eighty odd thousand dollars and a check deposited by the plaintiff equal to the proposed deficiency in the sum of $100,442.20, the Commissioner in effect advised plaintiff that he would, as a concession and as a special favor to the plaintiff, return to it a sum equal to the two overassessments, and, as there was no other method of paying this sum to plaintiff, he consented to schedule these overassessments and pay them to the plaintiff in the form of a refund. Accordingly, on July 18, 1927, the collector prepared, signed, and returned the schedule of overassessments and sent the same to the Commissioner. The Commissioner completed the schedules and the plaintiff was paid the amount without any computation of interest. The certificates of overassessments, which were completed at about the same time, likewise were for the amount of the overassessments without any allowance of interest. After the plaintiff had been paid these amounts, the parties to the proceeding before the Board of Tax Appeals stipulated that the deficiency for 1920, as determined by the Commissioner, was correct and an order was taken dismissing the appeal. The Commissioner then proceeded with the final adjustment of plaintiff's accounts for the 3 years in question by treating the overpayments for 1918 and 1919 as credits against the deficiency for 1920, as provided for under section 284 (a) of the Revenue Act of 1926 (44 Stat. 66), and determined interest accordingly. In this manner the accounts for these years were finally closed.

The plaintiff's contention is that, the Commissioner having scheduled the overassessments as overpayments and refunded to it these amounts, under section 1116 (a) of the Revenue Act of 1926 (26 U.S.C.A. § 1671 note), interest should have been computed from the dates of payment to the date of the refunds. This court and other courts have had many similar situations and the courts have consistently sustained the action of the Commissioner. York Safe & Lock Company v. United States, 40 F.(2d) 148, 69 Ct.Cl. 529; Standard Oil Company (Indiana) v. United States, 5 F. Supp. 976, 7 F.Supp. 301, 78 Ct.Cl. 714; Eastman Kodak Company v. United States, 13 F.Supp. 435, decided by this court February 3, 1936, certiorari denied October 19, 1936, 57 S.Ct. 46, 81 L.Ed. ——; McCarl v. Leland, 59 App.D.C. 362, 42 F.(2d) 346; Tull & Gibbs v. United States (C.C.A.) 48 F.(2d) 148; United States ex rel. Cole v. Helvering, 64 App.D.C. 35, 73 F.(2d) 852; and United States v. Pacific Midway Oil Company,[1] decided by the District Court for the Northern District of California and affirmed (C.C.A.) 66 F.(2d) 1017. The plaintiff recognizes the force of these decisions as opposed to recovery but contends that certain acts of the Commissioner take this case out of the general rule and permit recovery of interest. It contends that this case falls within the rule laid down by this court in the case of Libby, McNeill & Libby v. United States, 9 F.Supp. 673, 80 Ct.Cl. 579, which is an exception to the general rule.

In the Libby Case, supra, the Commissioner found an overpayment for 1917 and applied a part of it at the taxpayer's request to an installment of the original tax for 1928. The balance of the overpayment was certified as refundable. At the time this determination was made there was pending before the Board of Tax Appeals a deficiency for 1919, which apparently had been determined entirely separate and apart from the overpayment for 1917. The balance of the overpayment for 1917 was withheld from refund to the taxpayer pending disposition of the appeal to the Board for 1919. When the appeal for 1919 was finally determined, showing a deficiency for that year, the Commissioner as-

[1] No District Court opinion for publication.

sessed the deficiency and made demand for payment, which the taxpayer complied with. Later, when the taxpayer demanded the refund of the balance of the overpayment for 1917, the Commissioner sought to change his records and have the overpayment applied as a credit against the deficiency for 1919 which had already been satisfied. This court held that, since the deficiency had already been satisfied after assessment and demand for its payment by the Commissioner, there was nothing against which the overpayment could be applied.

In the instant case, the plaintiff voluntarily attempted to make payment of the deficiency which had not been assessed, and, when the matter was brought to the attention of the Commissioner, he treated this payment as a cash bond for the reason that overassessments had been determined for the prior years and the plaintiff had taken an appeal to the Board of Tax Appeals for a redetermination of the proposed deficiency. When the plaintiff requested the scheduling of these overassessments and the payment of them in full with interest, the Commissioner refused, but, as a concession, agreed to return a part of the money which he held in his hands for the payment of this deficiency when the amount of it should be found by the Board of Tax Appeals, however, on the clear condition that these overassessments would be kept open and applied as credits to whatever amount was found by the Board to be the correct amount of the deficiency, and, when this credit was made, the interest would be computed. Plaintiff was not only advised by letter that the overpayments were not being scheduled in the usual manner as a closed and completed transaction, but also the acts of the Commissioner were consistent with such provisional action, the letter advising that the overpayments would be scheduled without interest, the schedule of overassessments being completed without the usual interest computation, and the certificate of overassessment, of which plaintiff received a copy, likewise omitting the usual interest notation. Under such circumstances it would be groundless to say that plaintiff was not clearly advised that the Commissioner was not making final disposition of the overpayments at this time but was leaving them open for final adjustments when the deficiency was finally determined. It is therefore clear that the plaintiff accepted the payment of

these amounts with the full knowledge that the Commissioner intended to carry out the provisions of section 284 (a) of the Revenue Act of 1926 which permitted him, where there were overassessments and a deficiency, to credit the overassessments to the deficiency before computing interest. The Commissioner was aware that the plaintiff was apparently endeavoring to pay the 1920 proposed deficiency so as to stop interest on this amount and to collect interest on the overassessments for the years 1918 and 1919 for some greater number of years. The Commissioner was consistent from the beginning to the end of this transaction in keeping the record clear so that, in making these payments to the plaintiff, the provisions of section 284 (a) would not be impaired in any way and that he would be free to apply the overpayments as a credit to the deficiency as soon as the appeal taken to the Board of Tax Appeals was determined.

It will be seen that this case differs entirely in its facts and the actions of the Commissioner in reference to the deficiency from the facts presented in the Libby Case. There was no demand for payment made by the Commissioner or an application of the payment to the deficiency. On the contrary, the deficiency had not been assessed when the plaintiff voluntarily made the payment of a like amount to the collector. However, the plaintiff contends that refunds were made to it and that, where refunds or credits are made, section 1116 (a) requires that interest shall be computed from the date of the payment to the date of the refund on all overpayments. Technically speaking, refunds were made to the plaintiff but they were not real refunds in the technical sense. What the Commissioner did was to allow the plaintiff a sum equal to the overpayments out of the large amount in his possession in the form of refunds but, in substance, partial or advance payments only. The plaintiff knew when these amounts were paid that the Commissioner had refused to compute interest; that he had consistently stated that the overassessments when scheduled as overpayments would be applied to the deficiency when it was finally determined and that interest then would be computed.

In our opinion, the concession made to the plaintiff of the repayment of part of this large amount held by the Commissioner should not be a penalty upon him for the favor granted to the taxpayer. He

could have retained the entire amount until the decision of the Board of Tax Appeals had been rendered, during which period the plaintiff would have been out of the use of the large amount of money which, as a special favor, the Commissioner returned to him.

In our judgment this case falls within the general rule, as shown by the cases above cited, and not within the exception. The plaintiff is not entitled to recover, and its petition is therefore dismissed. It is so ordered.

BOOTH, Chief Justice, and WILLIAMS, Judge, concur.

LITTLETON, Judge, concurs in view of former decisions.

GREEN, Judge (concurring).

If the Commissioner had adhered to his original determination with reference to the payment by plaintiff and the application of the overassessments, he would have been on safe ground. But, realizing that a large amount of money would eventually have to be returned, he refunded the amount of the overassessments without interest, having previously and continuously given the plaintiff clearly to understand that interest would not be allowed as demanded. It is urged by plaintiff that the law expressly required the payment of interest on refunds, but I do not think this prevented the Commissioner from making a conditional payment especially under the circumstances of the case. In York Safe & Lock Co. v. United States, 40 F.(2d) 148, 69 Ct.Cl. 529, 538, we held that section 284 (a) of the Revenue Act of 1926 was mandatory that an overpayment should be credited against any tax due. In Standard Oil Co. (Indiana) v. United States, 5 F.Supp. 976, 7 F.Supp. 301, 78 Ct.Cl. 714, we discussed this matter further and held that the statute required the Commissioner to credit overpayments on deficiencies then existing. In Eastman Kodak Co. v. United States, 13 F.Supp. 435, 82 Ct.Cl. 504, we reaffirmed this rule. In the case at bar, the Commissioner had determined that overpayments had been made and that there was a deficiency. He therefore had no right or authority to refund any part of the overpayment that should under the law have been applied on the deficiency. When the Commissioner made the final settlement and adjustment of plaintiff's account for the 3 years involved, he complied with the law by applying the overpayments for 1918 and 1919 in payment of the deficiency of 1920 and computed the interest accordingly. The law did not require that interest should be allowed on a refund illegally paid, and his final determination was correct.

I am authorized to state that WILLIAMS, Judge, and BOOTH, Chief Justice, concur in the views above expressed.