**PACIFIC COAST BISCUIT CO. v. UNITED STATES.**

No. M—73.

Court of Claims.

June 1, 1937.

James S. Y. Ivins, of Washington, D. C. (Ivins, Phillips, Graves & Barker, of Washington, D. C., on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

In substance the facts in this case show that in March, 1923, the Commissioner of Internal Revenue made a jeopardy assessment of an additional tax of $20,786.69 for 1917 and on April 3 plaintiff filed a claim for abatement of the entire additional assessment on the grounds, first, that the taxpayer had not had an opportunity to appeal to the Commissioner under the provisions of the Revenue Act of 1921 (42 Stat. 227) from the determination of the Income Tax Unit, and, second, that the taxpayer was entitled to special assessment for 1918 and 1919 and that a substantial refund would be due the taxpayer for these years. The years

1918 and 1919 and plaintiff's claims for special assessment and for refund were then under consideration by the Commissioner.

Later, the Commissioner, on March 10, 1924, made a jeopardy assessment of an additional tax of $59,890.34 for 1918 before plaintiff's claims for special assessment and for refund had been finally decided and before a final audit and determination had been made for 1917 or any subsequent year. Plaintiff filed a claim for abatement of this additional assessment. At that time, or shortly thereafter, a reinvestigation of the tax liability of plaintiff and its several subsidiary corporations for the years 1917 to 1922, inclusive, was in progress by the internal revenue agent in charge at Seattle, Wash. The final investigation by the agent in charge was completed in November, 1925, and a full report thereof was made to the Commissioner which indicated an additional tax for 1918, recommended overassessments for subsequent years of $266,830.49, and showed a net overassessment for all the years involved of $126,569.76. Plaintiff on behalf of itself and affiliated corporations filed various waivers and claims for refund. The officials of the Bureau of Internal Revenue proceeded with consideration and audit of the tax liability of plaintiff and its affiliated corporations for the years 1917 to 1923, inclusive, in connection with the returns, revenue agent's reports, and claims for abatement and refund. Various conferences and hearings were held in the Bureau of Internal Revenue between the officials of the Commissioner's office and the authorized representatives and officers of plaintiff with the result that early in 1928, after such hearings and the submission of evidence and briefs by plaintiff, an informal agreement was arrived at between the officials of the Audit Review Division of the Income Tax Unit of the Bureau of Internal Revenue and plaintiff as a basis of settlement of all the items in controversy affecting the tax liability of the consolidated group for the years 1917 to 1923, inclusive, subject to approval of the General Counsel of the Bureau of Internal Revenue and the Commissioner. As a part of the suggested basis of settlement of the matters in controversy, plaintiff agreed to execute a closing agreement as to the principal amount of tax liability finally determined by the Commissioner. The suggested basis for final audit was approved by the General Counsel, Bureau of Internal Revenue, and officials of the Audit Review Division proceeded to prepare a final audit

for each of the years involved for approval by the Commissioner as his final determination with respect thereto. This final determination by the Commissioner was completed and approved on or about December 8, 1928, and was ready for mailing to plaintiff in accordance with section 274 of the Revenue Act of 1926 (44 Stat. 55), when Arrold C. Anderson, one of the taxpayer's authorized representatives and attorney in fact, requested that the final audit be delivered to him for transmission to plaintiff. This was done and inasmuch as the parties were in agreement as to the matters affecting the tax liability for all the years involved, the customary 60-day deficiency notice under section 274 of the Revenue Act of 1926 was not formally mailed by the Commissioner to the taxpayer. The final audit and determination of the Commissioner was sent to plaintiff at its Seattle, Wash., office by its representative to whom such audit and determination had been delivered by the Commissioner's office. No advice was given to the collector at Tacoma with reference to the results of this final determination by the Commissioner. On or shortly after the receipt by plaintiff from its representative in Washington of the Commissioner's final determination showing additional taxes totaling $73,504.60 to be due for the years 1917, 1918, and 1923 and overpayments totaling $272,300.59 for the years 1919 to 1922, inclusive, plaintiff mailed to the collector its checks for the amount of the additional taxes found to be due for 1917 and 1918 with interest thereon as computed by plaintiff. These checks reached the collector's office before the collector had received advice from the Commissioner as to his final determination, to which plaintiff had agreed, for the years 1917 to 1923, inclusive; and inasmuch as the collector had standing on his books the assessments theretofore made by the Commissioner for 1917 and 1918, the plaintiff's checks were, as requested by it, applied as payments on account of the taxes assessed for those years. However, when the matter came to the attention of the chief of the Income Tax Division of the collector's office, the collector concluded, in the light of previous correspondence between his office, the plaintiff, and the internal revenue agent in charge, that the amount of the checks remitted by plaintiff on January 7 and 10, 1929, should probably be entered and held in the collector's "suspense account" awaiting advice

from the Commissioner as to his final determination as to the result of his decision with respect to the tax liability of plaintiff for 1919 and subsequent years. Accordingly, the collector changed the action taken by his office in applying the remittances by plaintiff to the outstanding assessments for 1917 and 1918 and entered such amounts in his suspense account to be there held until receipt of information from the Commissioner with reference to the result of his decision for 1919 and subsequent years on plaintiff's claimed overpayments. A letter was written to the Commissioner asking for such information and the Commissioner replied that the remittances by plaintiff should be held by the collector in his suspense account and that the allowed overassessments for 1919 and subsequent years should reach the collector within a short time. The overassessments for 1919 to 1922, inclusive, as finally determined by the Commissioner and set forth in detail in his final audit theretofore delivered to plaintiff in December, 1928, were scheduled and allowed by the Commissioner in January, 1929, and upon receipt by the collector that official credited a portion of the overpayment allowed for 1919 to the unpaid additional tax finally determined by the Commissioner to be due for 1917 and 1918 and the small additional tax for 1923 and certified the balance of the overpayment for 1919 and the allowed overpayments shown on the schedule for 1920 to 1922, inclusive, as refundable with interest. At the same time the collector prepared and sent to the Commissioner notices of refund on Form 844 with respect to the amounts remitted by plaintiff on April 13, 1927, and January 7 and 10, 1929, as payments intended by plaintiff on account of the outstanding unpaid additional taxes and interest for 1917 and 1918, which amounts the collector continued to hold as excess payments in his suspense account. The action of the collector in satisfying the additional taxes due for 1917 and 1918 by credit from the overpayment allowed for 1919 and reporting as refundable the balance of such overpayment for 1919, together with the payments remitted by plaintiff with respect to the taxes for 1917 and 1918, before the collector received advice from the Commissioner as to overpayments for 1919, was approved by the Commissioner and the amounts remitted by plaintiff and held by the collector in his suspense account were refunded to plaintiff

with interest. These actions of the collector and the Commissioner give rise to the controversy here.

■ Plaintiff contends that the collector had no right to hold in his suspense account the payments made by it in January, 1929, on account of the outstanding unpaid assessments for 1917 and 1918 and subsequently refund the same as excess payments. In other words, plaintiff contends that the additional taxes finally determined by the Commissioner to be due for 1917 and 1918 having been paid before the collector received the schedule of overassessments and before the Commissioner approved such schedule, the entire overpayments for 1919 and subsequent years should have been refunded with interest from the dates on which such overpayments were made. On this basis plaintiff would have received interest of $34,762.44 in excess of the interest which was allowed and paid on the overpayment of $106,966.33 for 1919. If the credit complained of was in all respects proper and legal, no additional interest is due for the reason that the due date of the tax for 1917 and 1918 satisfied by credit was prior to the date of the overpayment determined for 1919.

In the circumstances of this case, we think the credit was legal and proper with the exception of $1,381.61 paid by plaintiff April 13, 1927, on account of the 1918 additional assessment and the failure of the Commissioner to pay any interest on that portion of the 1919 overpayment credited to the additional tax due for 1923. With these exceptions, the question presented is controlled by decisions of this court in Standard Oil Co. (Indiana) v. United States, 5 F.Supp. 976, 7 F.Supp. 301, 78 Ct.Cl. 714; Eastman Kodak Co. v. United States, 13 F. Supp. 435, 82 Ct.Cl. 504; Harnischfeger Corporation v. United States, 17 F.Supp. 205, 84 Ct.Cl. 17.

■ With respect to the amount of $1,381.61 paid by plaintiff on account of the additional tax assessed for 1918 on April 13, 1927, on demand of the collector, it appears that at the time this amount was collected and duly applied by the collector against the outstanding assessment no conclusion, decision, or final determination had been reached or made by the Commissioner with respect to the tax liability of any year in which an overassessment was determined and no such decision was made for more than a year thereafter. Moreover, it was not a voluntary payment made of a deficiency after a determination of an overpayment for another year in order to avoid a credit, but this payment was made at the demand of the collector. In these circumstances, the collector was not authorized to change his books almost two years later and transfer the amount paid April 13, 1927, to his suspense account to be later refunded as an excess payment because of the determination by the Commissioner of an overassessment for a subsequent year. Libby, McNeill & Libby v. United States, 9 F.Supp. 673, 80 Ct.Cl. 579.

■ Plaintiff is therefore entitled to recover interest on $1,381.61 at 6 per cent. per annum from December 16, 1920, the date of the overpayment for 1919, to April 13, 1927. Judgment will accordingly be entered in favor of plaintiff for $518.72 on this item. We allow interest on this erroneous credit of the 1919 overpayment only to April 13, 1927, for the reason that the Commissioner, when he returned to the taxpayer the amount of $1,381.61 paid on that date, allowed and paid interest thereon from April 13, 1927, to March 17, 1930.

■ With reference to the credit of $8.68 of the 1919 overpayment against an additional tax in that amount for 1923, it appears that the Commissioner paid no interest on that credit. This credit was proper and legal, but the statute provides that in such a case interest shall be paid on the amount credited from the date of overpayment to the due date of the tax against which credited. The 1919 tax which was credited to 1923 was overpaid December 16, 1920. The due date of the tax for 1923 against which the credit was made was, in the circumstances of this case, March 15, 1924. Plaintiff is therefore entitled to recover interest at 6 per cent. per annum on $8.68 of the overpayment for 1919 credited to 1923 from December 16, 1920, to March 15, 1924. Plaintiff is therefore entitled to recover $1.68 on this credit.

Judgment will accordingly be entered in favor of plaintiff for $520.40. It is so ordered.