**ALUMINUM CO. OF AMERICA v.
UNITED STATES.**

No. 42643.

Court of Claims.

Jan. 8, 1940.

Ward Loveless, of Washington, D. C. (Miller & Chevalier, of Los Angeles, Cal., and Smith, Buchanan, Scott & Ingersoll, of Pittsburgh, Pa., on the briefs), for plaintiff.

John W. Hussey, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the briefs), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

WILLIAMS, Judge.

The suit arises as the result of the determination by the Commissioner of an overpayment of income and profits tax in favor of plaintiff for 1917 in the amount of $1,-285,715.88 and the failure on the part of the Commissioner to make refund or credit of such amount and the interest thereon in a manner satisfactory to plaintiff. More specifically, what is asked is (1) judgment for $314,458.93 of that amount which was withheld by the Comptroller General and applied against an alleged indebtedness to the United States on account of certain transactions not connected with internal revenue taxes, and (2) a greater allowance of interest on the overpayment than that determined and allowed by the Commissioner.

With respect to the item of $314,-458.93, it will be sufficient to state that at the time the overpayment of $1,285,715.88 was scheduled on July 10, 1928, under circumstances which will hereinafter appear in connection with a discussion of the interest issue, the Government was contending that there was an indebtedness due from plaintiff on an unrelated matter, of $1,540,-473.57, and that when the overpayment was scheduled the Comptroller General withheld $314,458.93 in partial satisfaction of that indebtedness. Similar action was taken by the Comptroller General with respect to certain amounts which plaintiff also later sought to recover by suits in this court (No. J–683), as well as on account of an overpayment for 1918 (No. L–125). In those two suits, as well as in the case at bar, defendant pleaded the alleged indebtedness of $1,-540,473.57 as a counterclaim in defense of the actions brought by plaintiff, but in the submission of the cases to the court the parties entered into a stipulation that the decision in J–683 with respect to the counterclaim would be binding upon that issue in the two other cases. Judgment was rendered in J–683 on June 20, 1939, in which the counterclaim was allowed in part and disallowed in part, but in which the amount allowed was less than the amount claimed by plaintiff in that suit. It accordingly follows that the entire withholding by the Comptroller General in this case must be considered erroneous and that plaintiff is entitled to judgment for that amount. A similar situation existed in No. L–125 on account of the withholding of a part of the overpayment for 1918, and, consistent with that opinion and for reasons therein stated, plaintiff is entitled to judgment for $314,-458.93, with interest to a date preceding the date of the refund check by not more than thirty days, with appropriate credit for interest allowed in the interest computation and adjustments hereinafter referred to.

The principal controversy in regard to the computation of interest on the entire overpayment of $1,285,715.88 arises by reason of circumstances connected with the scheduling of that overpayment on July 10, 1928. At and prior to that time the Commissioner had under consideration not only plaintiff's tax liability for 1917, but also for 1918, 1919, 1920, and 1923. When an agreement was reached as to plaintiff's correct tax liability for 1917, which showed the foregoing over-

payment, plaintiff asked that that overpayment be scheduled immediately without awaiting a final determination of its tax liability for other years. At that time the usual statutory provisions were in effect which required that when an overpayment had been allowed, no part thereof should be refunded until after all deficiencies then due from the same taxpayer were satisfied by credit out of the overpayment. Plaintiff, however, in order to secure the immediate allowance and payment of the overpayment for 1917 without awaiting action on other years, entered into an agreement with the Commissioner which provided for the immediate allowance and payment of the principal amount of the overpayment for 1917 with interest thereon to be adjusted and paid later after final determination had been had of its tax liability for 1918, 1919, and 1920. Apparently through oversight the year 1923 was not mentioned in the agreement, though we do not think this materially affects the situation. In any event, after the agreement was executed by plaintiff, the Commissioner approved a separate determination for 1917, and on July 10, 1928, signed a schedule of refunds and credits through which $665,177.18 of the total overpayment of $1,285,715.88 was credited against an original assessment then outstanding for 1923 and the balance was scheduled for refund. Upon examination of that schedule the Comptroller General withheld out of the amount scheduled for refund the sum of $314,458.93 for application against an alleged indebtedness due from plaintiff as heretofore shown, and shortly thereafter, August 21, 1928, the balance, $306,079.77, was paid to plaintiff.

Later final determinations were had with respect to 1918, 1919, and 1920, which showed an overpayment for 1918 of $246,917.85, a deficiency for 1919 of $300,515.26, and a deficiency for 1920 of $761,332.49. The correctness of these amounts, as well as plaintiff's tax liability for 1923, was in controversy at the time the agreement was entered into with respect to the separate disposition of the overpayment for 1917. After these final determinations had been made for the years 1918, 1919, and 1920, the Commissioner credited the overpayment for 1918 of $246,917.85 against the deficiency for 1919 of $300,515.26, and shortly thereafter plaintiff paid the balance of the 1919 deficiency of $53,597.41, collection of interest thereon being withheld pending its adjustment in relation to other items. Soon thereafter a tentative computation of interest was made

by the Commissioner for 1917, 1918, 1919, 1920, and 1923, both on account of interest due from plaintiff on deficiencies and assessments and on account of overpayments in favor of plaintiff, and the result of that computation was a net amount of interest due plaintiff of $5,782,14, which in effect was deducted from the deficiency of $761,332.49 for 1920, leaving a balance of $755,550.35, which plaintiff paid May 1, 1931.

After all of these acts had occurred which are set out in detail in our findings, the Commissioner proceeded with a determination of an interest computation as shown on a schedule dated September 9, 1931, on account of his adjustments of plaintiff's tax liability for the years 1917, 1918, 1919, 1920, and 1923. As we understand the situation, what the Commissioner did for the purpose of his interest computation was to proceed in the manner in which he would have proceeded if the scheduling of the overpayment for 1917 had awaited final adjustment of the other years then in controversy. In scheduling the overpayment for 1917, as heretofore shown, since the deficiencies for 1919 and 1920 had not been assessed at the time the overpayment for 1917 was scheduled but there was an outstanding original assessment for 1923 against which claims for credit had been filed, the Commissioner applied part of that overpayment in satisfaction of the outstanding original tax for 1923 and refunded part of that amount without making any application against the deficiencies for 1919 and 1920 which had not then been finally determined and assessed. However, when he came to make his interest computation, after the deficiencies and overpayments for all years had been finally determined, he (in theory) proceeded, as required by statute, to apply the overpayments against the deficiencies and followed his practice of considering the earliest deficiencies satisfied by the earliest overpayments. In this manner deficiencies for 1919 and 1920 and only the first installment and a part of the second installment for 1923 were considered satisfied from the 1917 overpayment, instead of treating the disposition of the overpayment for 1917 in the manner in which it was originally treated, that is, using approximately one-half thereof to satisfy all of the original tax outstanding for 1923, withholding a part for application against an alleged indebtedness due from plaintiff, and refunding approximately one-fourth thereof. In a similar manner the Commissioner dealt with other items in the computation, without re-

gard to the manner in which the credits and refunds were made.

In view of the circumstances connected with the scheduling of the overpayments for 1917, we find no error in principle in the computation of interest made in that manner. In view of the provisions of the statute requiring the crediting of the overpayments against deficiencies, the only reasonable conclusion from the facts in this case is that but for the agreement which brought about the scheduling of the overpayments, the adjustments for all years would have been made substantially in the manner in which they are now shown as made theoretically for the purpose of interest computation. The agreement serves to explain why the overpayment was scheduled and the refund made when deficiencies were then due from the plaintiff, since express provision is made in the agreement which could protect the Commissioner against an improper interest adjustment. In other words, the refund was only being made with respect to the principal of the overpayment, with the interest adjustment for the years 1917, 1918, 1919, and 1920 held in abeyance until after a final determination was had for all years. Without the agreement the only legal procedure which the Commissioner could have followed would have been to withhold the scheduling of the overpayment for 1917 until the other years then in controversy were settled, at which time the credit applications could only have been made as they are now shown for the purpose of the interest computation. Cf. Standard Oil Company of Indiana v. United States, 5 F.Supp. 976, 7 F.Supp. 301, 78 Ct.Cl. 714.

That when the Commissioner purported to carry out the agreement he credited a part of the 1917 overpayment against an outstanding original assessment for 1923 (a year not mentioned in the agreement) does not alter the situation. That assessment was outstanding and unpaid and there was no alternative for the Commissioner but to satisfy this assessment before he could make a refund sought by plaintiff—the motivating cause of its execution of the agreement. Nor do we think the plaintiff has reason to complain because a portion of the overpayment was withheld by the Comptroller General, pending the determination of an alleged indebtedness due from plaintiff, since plaintiff was well aware that the indebtedness had been asserted and that amounts otherwise due plaintiff, including a part of

an overpayment for 1918 (involved in case No. L–125), had been withheld for the same purpose to the extent of $1,226,014.64. The amount withheld out of the 1917 overpayment, $314,458.93, was the balance of the alleged indebtedness.

As a result of the credit made against the 1923 assessment and the withholding on account of the alleged indebtedness, there remained a balance of only $306,079.77 from the determined overpayment for 1917 to be refunded to plaintiff. It should be noted, however, that when refund was made it was of that principal amount without interest, which showed clearly that, insofar as interest was concerned, the action was tentative or preliminary in character pending a final determination of tax liability for the other years in controversy.

When, however, the Commissioner came to make his final interest computation, many of the things done in making the refunds and credits and collecting the deficiencies had to be disregarded and the entire matter of interest for the several years dealt with on the basis that, but for the agreement which brought about the premature scheduling of the overpayment for 1917, the several years in controversy would have been settled as a group and credits, refunds, and deficiencies taken care of as provided by statute, namely, the crediting of the overpayments against any tax due and the collecting of any net amount due from plaintiff after appropriate adjustment for interest on the basis of such an application of the statute. That such action was proper is fully supported by our decision in Standard Oil Company of Indiana v. United States, supra, and Eastman Kodak Co. v. United States, 13 F.Supp. 435, 82 Ct.Cl. 504.

Much is said in the argument by plaintiff about the failure of the Commissioner to carry out the agreement and by defendant about an attempted repudiation of the agreement through the contentions advanced in this suit. Both arguments are beside the point. The agreement was merely an arrangement through which the Commissioner was enabled to schedule an overpayment in advance of the time it should have been scheduled under the statute, but in which provision was made to protect against an excessive allowance of interest. It was performed by the Commissioner to the extent permitted under the statute. Nor is repudiation an issue in arriving at the correct interest computation, for neither party could change the statutory provisions with refer-

ence to credits and interest thereon. The agreement served its purpose when the overpayment was scheduled and refund made to the extent permitted under the statutes, except that, as contemplated by the agreement, an interest computation was later required after the tax liabilities for several years were finally determined.

A detailed discussion of the many items entering into the interest computation would serve no useful purpose and would unduly extend this opinion. Suffice it to say that in general we approve the principles followed by the Commissioner in making the interest computation as set out in our findings of fact. The contention by plaintiff that the Commissioner erred in this computation in that he computed interest after a theoretical application of the earliest overpayments as a credit in satisfaction of the earliest due deficiencies, instead of applying the latest overpayments against the earliest deficiencies, cannot be sustained. No specific statutory provisions exist as to how such a credit application should be made, though the procedure adopted by the Commissioner seems logical and consistent with the statute. Unquestionably, in some cases cited by plaintiff a different rule has been followed in the computation set out in the findings of fact set out in those cases, but no issue was raised on the order of application, and of course it cannot be said that the issue was decided, and, besides, it would appear that the interest computations referred to by plaintiff were made long prior to the interest computation made in the present case. Whether there is a well-established practice in the Internal Revenue Bureau which might be considered as having been sanctioned by Congress through continued enactment of similar credit and refund statutes after a long continued administrative interpretation, we cannot say, since the record is silent on this matter. We shall accordingly not disturb the method which the Commissioner has followed in this case of applying the earliest overpayments against the earliest deficiencies.

Adjustment of the computation will, of course, be necessary by reason of our holding that the plaintiff is entitled to judgment for the amount of $314,458.93 withheld by the Comproller General on August 21, 1928. In his computation, the Commissioner treated that amount and the amount refunded at or about the same time ($306,-079.77) as erroneously refunded and charged plaintiff with interest thereon from August 21, 1928, until the dates in April and May 1931 when the amount was deemed repaid through credit and cash payment upon a settlement of the accounts for the several years. Such computation was proper insofar as it related to the cash refund, but, since the amount withheld has now been found erroneously withheld, it cannot be said that such withholding constituted payment and that interest should be charged thereon. On the contrary, such amount represents a part of an overpayment for 1917 which has not been refunded to plaintiff and upon which, but for the adjustments required in connection with the other years referred to in this proceeding, interest should be computed in favor of plaintiff from the date the tax was paid to a date preceding the issuance of the refund check by not more than thirty days. See No. L–125 decided this day. However, since that amount was an overpayment at the time deficiencies were due for other years referred to in this proceeding, and the interest computation has been made on the basis of all years which treated, among other things, the amount withheld as paid, a recomputation should now be made which would reverse that action and allow interest thereon for the time not previously allowed by considering as the date to which interest is allowable a future date preceding the date of the refund check by not more than thirty days. This will make necessary a readjustment of some of the items in the theoretical computation since the amount withheld must now be considered an overpayment for 1917 and as applied for interest purposes as a credit against any deficiencies then due, and then make an appropriate change with respect to other items which are affected thereby.

With respect to other features of the Commissioner's computation, the parties now appear to be in agreement that, under the method followed by the Commissioner of applying the earliest overpayments against the earliest deficiencies, the periods for which interest was computed are correct except as to a part of the overpayment for 1919, $245,751.37, which arose by reason of an amortization claim. On this item defendant properly concedes plaintiff's contention that an informal claim filed November 10, 1921, requires the computation of interest thereon from six months thereafter, namely, May 10, 1922, as provided by section 1324 (a) of the Revenue Act of 1921, 42 Stat. 316.

Plaintiff is entitled to recover and will be awarded judgment in the sum of $314,-458.93, with interest thereon, computed in accordance with section 177(b) of the Judicial Code, as amended, 28 U.S.C.A. § 284 (b), with the readjustment of the interest heretofore paid or credited, as indicated in this opinion. It is so ordered.